**In re Gary D. REUSCHER, Debtor.**

**ENERGY PRODUCTS ENGINEERING, INC., and William J. Boyle, Appellants,**

v.

**Gary D. REUSCHER, Appellee.**

**In re James SHEIBLE, Debtor.**

**ENERGY PRODUCTS ENGINEERING, INC., and William J. Boyle, Appellants,**

v.

**James SHEIBLE, Appellee.**

Civ. Nos. 93–4321, 93–4322.

United States District Court,
S.D. Illinois.

July 8, 1994.

Sidney A. Gould, Bridgeton, MO, for appellants.

Douglas A. Antonik, Mt. Vernon, IL, for appellees.

### MEMORANDUM AND ORDER

FOREMAN, District Judge:

These cases are before the Court on appeal from two separate decisions of the bankruptcy court concerning debtors Gary D. Reuscher and James Sheible. The bankruptcy court's orders were entered in a case or proceeding referred to the bankruptcy judge under 28 U.S.C. § 157 (1988). Thus, this Court has jurisdiction to hear these appeals under 28 U.S.C. § 158 (1988).

The Court notes that both cases share a common base of facts and raise interrelated issues of law. Therefore, for purposes of judicial economy, the Court hereby **CONSOLIDATES** its disposition of these appeals into one opinion. Pursuant to Bankruptcy Rule 8012, the Court heard oral argument on both appeals on June 22, 1994.

### I.  BACKGROUND

Debtors Sheible and Reuscher were officers and directors of an Illinois corporation known as Howbeit of Illinois, which was incorporated in 1986. Sheible was president and Reuscher was treasurer. Together, they owned a controlling interest in the corporation's stock.

The amended complaint before the bankruptcy court alleges that the corporation was involuntarily dissolved in February 1989 for failure to pay its franchise fee. The complaint further alleges that a financial statement for the fiscal year ending June 30, 1988, shows that the corporation was insolvent. More specifically, the auditor concluded that the current liabilities exceeded current assets and that the company "may be unable to continue in existence."

Sometime during 1987 or 1988, while the corporation was still in operation, Howbeit had entered into engineering and consulting agreements with appellants Energy Products Engineering, Inc., and William Boyle. Appellants brought an action in Pulaski County in 1989 seeking payment of $252,926.08 on behalf of Energy Products and $26,695.47 on behalf of Boyle based upon these agreements. The state court entered a default judgment against the corporation, but apparently has not yet ruled on the appellants' claims seeking personal liability against Reuscher and Sheible as directors of the corporation.

Because the parties have not submitted a copy of the state court complaint, this Court is unable to determine the exact nature of the charges against Reuscher and Sheible. However, the appellants' bankruptcy complaint describes the claims as a "count for conversion and misappropriation of the assets of Howbeit of Illinois, before and after the dissolution of the corporation, by the officers and directors, having a fiduciary duty with respect to the corporation affecting the interests of the plaintiffs as creditors, under the (1) Illinois Business and Corporation Act and (2) for tortious acts by a fiduciary officer and director which created a liability to creditors, especially with respect to an insolvent corporation."

Reuscher and Sheible filed separate petitions for personal bankruptcy in May and June 1990 while the state court action was pending. The appellants commenced adversary proceedings in both bankruptcy cases to determine the dischargeability of the debt represented by the state court action. The bankruptcy court granted the debtors' motions to dismiss, holding that the appellants' amended complaint failed to state a claim for relief pursuant to § 523(a)(4) of the Bankruptcy Code. The creditors now appeal that ruling.

### II.  ANALYSIS

In a bankruptcy appeal, the bankruptcy court's findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Bankruptcy Rule 8013. *See also In re Excalibur Auto. Corp.,* 859 F.2d 454, 458 (7th Cir.1988); *In re Evanston*

*Motor Corp.,* 735 F.2d 1029, 1031 (7th Cir. 1984). However, where questions of law are concerned, the district court will review the bankruptcy court's ruling *de novo. In re Sanderfoot,* 899 F.2d 598, 600 (7th Cir.1990), *rev'd on other grounds,* 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991); *In re Evanston Motor Corp.,* 735 F.2d at 1031. These appeals are based entirely upon the bankruptcy's court's interpretation of Bankruptcy Code § 523(a)(4) and, therefore, the de novo standard of review applies.

Section 523(a)(4) provides that a discharge in a bankruptcy proceeding "does not discharge an individual debtor from any debt ... for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). The debtors argued—and the bankruptcy court held—that in order for a debt to be nondischargeable for fraud or defalcation while acting in a fiduciary capacity, "the plaintiffs must establish that an express or technical trust existed, that the debt was caused by fraud or defalcation, and that the debtor acted as a fiduciary to the creditor at the time the debt was created." The bankruptcy court found that the appellants' complaints failed to allege any of these three elements.[1]

### A. The Legal Standard

There is considerable confusion in the federal courts as to what constitutes a "fraud or defalcation while acting in a fiduciary capacity" for purposes of § 523(a)(4). One of the key Supreme Court decisions regarding the interpretation of this statutory provision (or, more precisely, a forerunner of the present language) states:

> The meaning of these words has been fixed by judicial construction for nearly a century. *Chapman v. Forsyth,* 2 How. 202 [11 L.Ed. 236], decided in 1844, is a decision to the effect that within the meaning of a like provision in the [Bankruptcy] Act of 1841, a factor does not act in a fiduciary capacity; the statute "speaks of technical trusts,

and not those which the law implies from the contract." ... It is not enough that by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee *ex malefi-cio.* He must have been a trustee before the wrong and without reference thereto.... The language would seem to apply only to a debt created by a person who was already a fiduciary when the debt was created."

*Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 153–54, 79 L.Ed. 393 (1934).

Based upon this decision, the term "fiduciary" in § 523(a)(4) has been narrowly construed. Most courts have held that the term applies only to relationships involving "technical or express trusts." *See Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir.1987). Disagreement arises, however, as to what is meant by the term "technical trust." Some courts have held that "[a]n express or technical trust is a formal fiduciary relationship whose creation is based upon the intentions of a settlor and/or a beneficiary. A formal trust document is executed which establishes the rights and duties of the parties to the trust." *In re Holmes,* 117 B.R. 848, 852 (Bankr.D.Md.1990). However, other courts have adopted a much broader interpretation, as acknowledged in *In re Bennett,* 989 F.2d 779, 784–85 (5th Cir.), *cert. denied sub nom. Bennett v. LSP Inv. Partnership,* —— U.S. ——, 114 S.Ct. 601, 126 L.Ed.2d 566 (1993):

> Most courts today ... recognize that the "technical" or "express" trust requirement is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type obligations are imposed pursuant to statute or common law.... Thus, the trust obligations necessary under section 523(a)(4) can arise pursuant to a statute, common law or a formal trust agreement.

---

1. The bankruptcy court also ruled that the complaint failed to allege embezzlement or larceny. Although the appellants initially listed this ruling as a point of error in their statement of issues on appeal, they did not pursue the issue in their briefs. In fact, the appellants' reply briefs state that "Appellant has set aside any arguments on the question of embezzlement or larceny." Sheible Reply Brief, at 11; Reuscher Reply Brief, at 11. Therefore, the appellants have waived the issue.

The Seventh Circuit's recent decision on this issue appears to support the broader interpretation. *In re Marchiando*, 13 F.3d 1111 (7th Cir.), *cert. denied sub nom. Illinois Dep't of Lottery v. Marchiando*, —— U.S. ——, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994). The opinion cites to *Bennett* with approval as an example of cases in which the fiduciary relationship is covered by § 523(a)(4), but underscores the fact that some types of trust relationships—i.e., constructive, resulting and implied trusts—are not covered by the statute. The decision attempts to resolve the confusion in the law by stating:

> The key to knitting the cases into a harmonious whole is the distinction stressed in *Davis* and other cases between a trust or other fiduciary relation that has an existence independent of the debtor's wrong and a trust or other fiduciary relation that has no existence before the wrong is committed. A lawyer's fiduciary duty to his client, or a director's duty to his corporation's shareholders, pre-exists any breach of that duty, while in the case of a constructive or resulting trust there is no fiduciary duty until a wrong is committed. The intermediate case, but closer we think to the constructive or resulting trust pole, is that of a trust that has a purely nominal existence until the wrong is committed.

*Id.* at 1115–16.

The Seventh Circuit found that the debtor in *Marchiando*—a convenience store owner who was licensed to sell state lottery tickets—fell into this intermediate category. Pursuant to state statute, the proceeds of lottery ticket sales "shall constitute a trust fund until paid to the Department." As a result, the Seventh Circuit found that the convenience store owner technically became a trustee as soon as she received her license to sell lottery tickets. But "[r]ealistically, the trust did not begin until she failed to remit ticket receipts. For until then, she had no duties of a fiduciary character toward the Department of Lottery or anything or anyone else." *Id.* at 1116.

The court analogized this situation to the "floor planning" arrangement, where a bank insists that the proceeds of any sale from inventory be remitted to the bank to pay down the principal of the loan as soon as the sale is made. "Such arrangements, held not to come within the scope of section 523(a)(4) ..., are remote from the conventional trust or fiduciary setting, in which someone—a lawyer for example, or a guardian, or a managing partner—in whom confidence is reposed is entrusted with another person's money for safekeeping." *Id.*

If we probe more deeply the distinction between the fiduciary relation that imposes real duties in advance of the breach and the fiduciary relation that does not we find that the first group of cases involve a difference in knowledge or power between fiduciary and principal which ... gives the former a position of ascendancy over the latter.... The fiduciary may know much more by reason of professional status, or the relation may be one that requires the principal to repose a special confidence in the fiduciary; both factors are present in the case of a lawyer-client relation and also the relation between the director and shareholder or managing partner and limited partner. Or the principal may be a child, lacking not only knowledge but also the power to act upon it. These are all situations in which one party to the relation is incapable of monitoring the other's performance of his undertaking, and therefore the law does not treat the relation as a relation at arm's length between equals.

All the cases except *Quaif* and *Carey* that have held debts nondischargeable by virtue of section 523(a)(4) have involved either express trusts of a conventional variety or fiduciary relations of the kind just described—relations of inequality that justify the imposition on the fiduciary of a special duty, basically to treat his principal's affairs with all the solicitude that he would accord to his own affairs. Nothing of the sort is involved here. The fiduciary is a ticket agent with no edge based on the possession of power or expertise; the principal is the state itself. The inequality of relation that calls for the imposition of fiduciary duties is wholly absent.

*Id.*

█ Based upon this analysis, it appears clear that the Seventh Circuit would recog-

nize that § 523(a)(4) applies to fiduciary relationships that are based upon statutes as well as the conventional common law trust and fiduciary relationships. The key to nondischargeability under § 523(a)(4) is whether the trust relationship existed prior to the debtor's alleged breach of duty. Thus, the Court must determine whether a fiduciary relationship exists in the case at bar and when such duty arose.

## B. Fiduciary Obligations of Corporate Officers and Directors

■ The appellants argue that corporate officers and directors have fiduciary obligations from the moment that they take office and that these duties extend to creditors as well as the corporation itself. The debtors, however, argue that the officer/director's duty relates only to the corporation and its shareholders—and *not* to the creditors of the corporation. Both parties are correct up to a point.

Illinois law has long recognized that corporate officers or directors are generally considered to be "agents or trustees for the shareholders. They owe no duties or obligations to others." *Beach v. Miller*, 130 Ill. 162, 170, 22 N.E. 464, 466 (1889). Thus, under ordinary circumstances, the officer/director has no fiduciary relationship with a corporation's creditors.

However, this general rule applies only to solvent corporations; the situation changes if the corporation becomes insolvent or is dissolved. "[T]he moment a corporation becomes insolvent its directors occupy a different relation. The assets of the corporation must then be regarded as a trust fund for the payment of all its creditors, and the directors occupy a position of trustees...." *Id.; see also Coleman v. Howe*, 154 Ill. 458, 467, 39 N.E. 725, 727 (1895) ("The capital stock of an insolvent corporation is a trust fund for the payment of its debts.... It is the duty of directors of a corporation to manage its capital stock as a trust fund for the benefit of its stockholders while it exists, and of its creditors in case of its dissolution."); *Atwater v. American Exchange Nat'l Bank of Chicago*, 152 Ill. 605, 613, 38 N.E. 1017, 1022 (1893) ("When a corporation becomes insolvent, its

assets are regarded as a trust fund for the payment of its creditors; and the directors, who are the agents or trustees of the stockholders during the solvency of the corporation, occupy a fiduciary relation towards the creditors when the corporation becomes insolvent."); *see also Heaney v. Riddle*, 343 Pa. 453, 23 A.2d 456 (1942) ("The assets of a dissolved corporation constitute a trust fund for creditors and stockholders (16 Fletcher, Cycl. Corp. 1081, § 8217), and when defendants, as liquidating trustees, distributed the assets among themselves as stockholders they made themselves personally liable, by reason of such breach of their trust, to a creditor whose right to priority could not be thus destroyed.").

Based upon these precedents, the Court rejects the appellants' contention that Reuscher and Sheible owed them a fiduciary duty at the time that the parties entered into their contract simply because Reuscher and Sheible were officers and directors of the corporation. However, based upon the allegations of the appellants' complaint, it appears that Howbeit subsequently was declared insolvent and ultimately allowed its corporate charter to elapse. Assuming these facts to be true, the Court finds that the debtors then acquired a fiduciary obligation to preserve and protect the corporation's assets for the appellants and other creditors.

The Court must next determine whether this fiduciary relationship is of the type that may create a nondischargeable debt under § 523(a)(4). The federal courts are split on this issue. The bankruptcy court in the Eastern District of Pennsylvania has held that this type of fiduciary duty arises only as a result of the officer's alleged wrongdoing and, therefore, is not the type of fiduciary obligation recognized by the Supreme Court in *Davis*.

[T]he difficulty with finding that the relationship of the director of a corporation to its creditors automatically gives rise to an express trust of all assets held by that corporation for purposes of § 523(a)(4) broadens the scope of that provision to embrace a debtor-creditor relationship.... [T]he indebtedness to the creditors may be found not to predate the purported fiducia-

ry relationship in this situation. Therefore, the trust relationship which arises from a corporate liquidation appears likened to a trust *ex maleficio,* which arises out of the very action which creates the alleged fiduciary relationship. Such a relationship does not give rise to § 523(a)(4) liability.

*In re Kaplan,* 162 B.R. 684, 705 (Bankr. E.D.Pa.1993); *see also In re Martin,* 162 B.R. 710, 714 (Bankr.C.D.Ill.1993).

The District Court of Colorado has taken the opposite position, holding that the fiduciary obligation arises chronologically before the wrongdoing and not as a result of the wrongdoing. *In re Bruning,* 143 B.R. 253, 255–56 (D.Colo.1992) ("I hold that it arises upon insolvency, not in response to the director's later wrongdoing, and thus falls squarely within 11 U.S.C. § 523(a)(4)'s ambit."); *see also In re Bagel,* 1992 WL 477052 (Bankr.E.D.Pa.1992) (holding that fiduciary obligation arises at time of corporation's insolvency or dissolution and, therefore, the debt arising out of debtor's wrongdoing as liquidating trustee arose after the fiduciary relationship was established); *John P. Maguire & Co., Inc. v. Herzog,* 421 F.2d 419, 422 (5th Cir.1970) ("Although it is true that the debt due appellee originally arose out of [the corporation's] contractual obligation to appellee, it is the direction and application of proceeds from sales of American furniture to creditors other than appellee, to whom the payments were due, that is the basis of the present suit.").

■ This Court finds the *Bruning* analysis to be the most persuasive. Up to the point of insolvency, corporate officers or directors owe no duty to the corporation's creditors. Therefore, the officers and directors are not liable for the corporation's debts to such creditors. But when the corporation becomes insolvent or is dissolved, the officers and directors then assume fiduciary obligations to preserve and protect the corporation's assets for the creditors. If they carry out those fiduciary duties by properly preserving the corporation's assets and distributing them to creditors based upon the latter's appropriate pro rata share or priority, then the officers or directors will not incur a

debt that is subject to nondischargeability under § 523(a)(4). However, if they breach their fiduciary duties—e.g., if they misappropriate corporate assets for their own personal gain—they will incur a nondischargeable liability.

When viewed in this context, it is clear that the officer/director's wrongful conduct does not create the fiduciary duty. Rather, the duty arose upon the corporation's insolvency or dissolution and the officer/director's subsequent breach of that duty creates an obligation or debt. Accordingly, the Court finds that such a debt is subject to nondischargeability under § 523(a)(4).

The debtors argue that the case at bar is indistinguishable from *Marchiando,* where the Seventh Circuit held that the requisite fiduciary relationship did not exist. However, in *Marchiando,* the court found that the "trust" established by the state statute existed in name only—i.e., although the statute declared the lottery proceeds to be held in trust, there was no trust relationship in the conventional sense. 13 F.3d at 1116. To hold otherwise would run contrary to *Judd v. First Federal Savings & Loan Ass'n,* 710 F.2d 1237, 1241 (7th Cir.1983), "which holds that the word 'trust' in an instrument does not by itself 'transform a traditional debtor-creditor relationship into a fiduciary relationship[.]"

As discussed above, the Seventh Circuit has found that the key element of a conventional fiduciary relationship is a "relation[ ] of inequality" with respect to knowledge or power. *Marchiando,* 13 F.3d at 1116. The court held that there was no such inequality where the alleged fiduciary is a lottery ticket agent and the principal is the state itself. *Id.* Thus, the court found that "[t]he convenience-store keeper who commingles the proceeds of her lottery ticket sales with her other receipts is at a considerable remove from the lawyer who converts money in his clients' escrow accounts or the bank trust department that invests someone's retirement fund recklessly." *Id.* at 1116–17.

This Court finds that the trust relationship created by a corporation's insolvency is more like the conventional trust relationship pres-

ent in the lawyer-client and corporate officer-shareholder context than the "trust" declared by the Illinois lottery statute. Indeed, the corporate officer/director's duty toward creditors of an insolvent corporation is merely a transformation of his original duty toward the corporation's shareholders. Although a creditor's relationship with the corporation may begin as an arm's length transaction when the debt is incurred, the creditor loses this position of equal knowledge and bargaining power when the corporation becomes insolvent or is dissolved. The creditor can collect on the debt—or any portion of it—only if the corporate officers/directors fulfill their obligation to preserve the corporate assets.

▇ After reviewing the appellants' amended bankruptcy complaints, the Court finds that the creditors have sufficiently raised a claim under § 523(a)(4). The complaints are not model pleadings, but must be read liberally in favor of the non-moving party on a motion to dismiss. The Court finds that the complaints allege the existence of a fiduciary duty towards the creditors that arose at the time that the corporation became insolvent or was dissolved.[2] If the debtors breached this duty, as the appellants appear to have alleged in their state court proceeding, the liability created by that breach would be nondischargeable under § 523(a)(4).[3]

### III. SUMMARY

Based upon the foregoing analysis, the Court hereby **REVERSES** the bankruptcy court's orders dismissing the appellants' adversary complaints against debtors Reuscher and Sheible. These cases are **REMANDED** to the bankruptcy court for further proceed-ings consistent with this order. The Clerk of the Court shall enter judgment accordingly.

**IT IS SO ORDERED.**

---

2. The appellants also appear to allege that the debtors breached a fiduciary duty by failing to fulfill the corporation's agreements with the appellants. This theory cannot proceed because the corporation apparently was still solvent and had not been dissolved at the time that the agreements were executed. Thus, the parties had merely a debtor-creditor relationship, which does not raise any fiduciary duties or trust obligations.

3. The Court notes that the appellants have obtained a judgment against the corporation as part of the state court proceedings. That judgment, however, is not a debt "for fraud or defalcation while acting in a fiduciary capacity...." Rather, it is a debt that was created prior to the existence of the fiduciary relationship. The only debt subject to § 523(a)(4) in this case would be the debtors' liability for breach of their fiduciary duties—which is still pending in the state court proceedings.