**In re Carroll Marvin JOHNSON and Marvis Lorene Johnson, Debtors.**

**Amie M. BAST, Plaintiff,**

**v.**

**Carroll Marvin JOHNSON, Marvis Lorene Johnson, Defendants.**

**Amie M. BAST, Plaintiff,**

**v.**

**Jere L. LOYD, Chapter 7 Trustee, Defendant.**

**Bankruptcy No. 94–50086. Adv. Nos. 94–5016, 94–5015.**

United States Bankruptcy Court, W.D. Missouri.

Nov. 16, 1994.

Barry Anderson, Strong, Strong, & Prokes, Maryville, MO, for plaintiff Amie M. Bast.

John L. Manring, Utz, Litvak, Summers, Powers & Manring, St. Joseph, MO, for debtors/defendants Carroll and Marvis Johnson.

Jere L. Loyd, Chapter 7 Trustee, St. Joseph, MO.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

Plaintiff Amie M. Bast (the "plaintiff") filed two adversaries in this case which were consolidated for trial by Order of this Court on October 5, 1994. In Adversary No. 94–5016 plaintiff claims the debt owed to her by debtor/defendants (the "debtors") is nondischargeable pursuant to 11 U.S.C. § 523(a)(2) and (4). In Adversary No. 94–5015 plaintiff asks this Court to find that her claim against debtors is a secured claim to the extent of $46,079.80, or to find that all other unsecured claims in debtors' bankruptcy be subordinated to plaintiff's claim, or to impose a constructive trust on the funds held by the trustee in the amount of $46,079.80. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (K) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons set forth below, I find that the debt to plaintiff in the amount of $240,000 is dischargeable.

## FACTUAL BACKGROUND

Plaintiff is an eighty-seven year old widow. Debtor Marvis Lorene Johnson is plaintiff's niece by marriage. Plaintiff has no other relatives. Plaintiff and debtors have been acquainted for forty-five years, and debtor Carroll Marvin Johnson has farmed plaintiff's eighty-acre farm from 1970, when her husband died, until the end of 1993. The farming arrangement was such that debtors and plaintiff split the profits and expenses equally. On March 6, 1990, plaintiff and Marvin Johnson executed a Durable Power of Attorney with General Powers for All Purposes (the "POA 1"), apparently at plaintiff's suggestion.[1] See Pl.Exh. # 1. Marvin Johnson testified that plaintiff wanted him to

act as her attorney-in-fact to collect monies due her from two acquaintances to whom she had made loans. Marvin Johnson filed suit on plaintiff's behalf against both parties and obtained at least one judgment in plaintiff's favor. As monies were collected by Johnson from the two acquaintances, he turned such monies over to plaintiff. Marvin Johnson also testified that he used the POA to gain access to plaintiff's safety deposit box and examine her Last Will and Testament. He stated that he was aware he and his wife were to inherit plaintiff's farm at her death. Just prior to the execution of POA I, on February 28, 1990, Marvin Johnson asked plaintiff to lend him $10,000, which she did. Such loan was unsecured and undocumented, however, Johnson agreed to pay plaintiff interest of ten percent and repay the loan when he could. On November 14, 1990, plaintiff executed a loan with the American Bank, subsequently Mercantile Bank (the "Bank"), for $80,000 secured by six certificates of deposit which totalled $60,000. It is undisputed that the proceeds of the loan were disbursed to Marvin Johnson, that Marvin Johnson promised to pay plaintiff ten percent interest, and to also pay the ten percent interest which the Bank was charging plaintiff. Marvin Johnson was to repay the principal when he could.

Debtors purchased a 170 acre farm on February 18, 1991, for a purchase price of $201,198.80 (the "Hall Farm"). The Contract for Sale of Real Property which debtors initiated required a payment of $20,198.88 upon execution of the contract and a payment of $30,179.82 by March 18, 1991. See Pl.Exh. # 3. On February 19, 1991, plaintiff executed another loan from the Bank for $75,000 and pledged additional certificates of deposit to secure this loan as well. Again, it is undisputed that the proceeds of said loan were ultimately disbursed to Marvin Johnson's bank account at the Bank. A portion of such proceeds were then used by Mr. Johnson to make the two farm payments. Nevertheless, plaintiff never secured an interest in the Hall Farm with a Deed of Trust. Plaintiff initiated one other loan for $25,000 from

---

1. For reasons that were not explained, the parties executed a second Durable Power of Attorney with General Powers for All Purposes on June 20, 1991. ("POA II"). Pl.Exh. # 2.

the Bank on August 2, 1991. Plaintiff gave no security for this loan, and disbursed the proceeds to Marvin Johnson. On December 3, 1992, the three loans from the Bank were consolidated into one loan for $180,000 secured by certificates of deposit totalling $181,435.57.[2] The Bank insisted that plaintiff sign each CD and that Marvin Johnson sign each CD as plaintiff's attorney-in-fact. On a number of occasions the banker spoke directly with plaintiff and ascertained that she wished to borrow these funds from the bank, and to loan the same funds to Marvin Johnson.

In addition to the above transactions, Marvin Johnson also received three checks from plaintiff totalling $50,000 between March 3, 1992, and March 24, 1993.[3] Marvin Johnson stated plaintiff never asked him to repay the loans, never asked for any security, and never asked the purpose of any of the loans. Plaintiff also testified she trusted Mr. Johnson implicitly and never questioned him about why he needed the money.

Finally, in November of 1993 Mrs. Johnson became quite ill and was hospitalized for ten days. Shortly thereafter, Marvin Johnson asked plaintiff to loan him some additional funds. Plaintiff refused because she had pledged all of her CD's by this time. Johnson suggested plaintiff mortgage her farm, but plaintiff refused to encumber her real estate and POA II was revoked on December 13, 1993. Marvin Johnson stated plaintiff revoked POA II because he informed her he was liquidating his farming operation.

Debtors held a liquidation sale for their real property on February 2, 1994. The Hall farm sold for $190,400. Debtors netted $28,536.56 from this sale. On February 10, 1994, debtors sold all of their farm equipment and machinery. After satisfying all liens, debtors' estate presently contains the sum of $46,079.80 as proceeds of the liquidation of the farm, equipment, and machinery.

Plaintiff filed a lawsuit against debtors in February of 1994 demanding repayment of the loans. Marvin Johnson testified that the plaintiff never asked him to repay the loans, save through the filing of the lawsuit.

Debtors filed bankruptcy on March 1, 1994.

Plaintiff seeks to have her unsecured claim for approximately $200,000 declared nondischargeable pursuant to section 523(a)(2) and (4) of the Bankruptcy Code (the "Code"). She also seeks to impose a constructive trust on the $46,079.80 in proceeds received by debtors from the liquidation sales.

## DISCUSSION

■ I will first deal with the dischargeability action against Mrs. Johnson, and will find in her favor.

Mrs. Johnson testified that she had no awareness of any of the transactions between plaintiff and Marvin Johnson. Plaintiff also testified that she did not believe Mrs. Johnson was aware of the transactions because she was only marginally involved in the farming operation.

Thus, I find that Mrs. Johnson was not in a fiduciary relationship with plaintiff, had no knowledge of the loan transactions between plaintiff and Marvin Johnson, and did not obtained any of the funds at issue by false pretenses, or false misrepresentations, or actual fraud. Therefore, as to Mrs. Johnson, I find the debt to be dischargeable.

As to Marvin Johnson, plaintiff claims Marvin Johnson obtained the money from her under false pretenses, by false representation, or actual fraud. Alternatively, plaintiff claims he obtained the money from her by fraud or defalcation while acting in a fiduciary capacity.

---

2. The consolidated loan was secured by the following certificates of deposit: (1) six $10,000 CD's at the Farmer's and Merchants Bank in Elmo, Missouri; (2) two $10,000 CD's at Notaway State Bank; (3) one $25,307.57 CD at Notaway State Bank; and (4) one $76,128 CD at the American Bank.

3. On March 3, 1992, plaintiff executed a check for $25,000. On September 24, 1993, plaintiff executed a check for $5,000. On March 24, 1993, plaintiff executed a check for $20,000.

### A. False Pretenses, False Misrepresentation or Actual Fraud

■ The dischargeability of debt is a matter of federal law governed by the terms of the Code. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991); *Brown v. Felsen*, 442 U.S. 127, 120–30, 99 S.Ct. 2205, 2208–09, 2211, 60 L.Ed.2d 767 (1979).

■ Section 523(a)(2) provides for the nondischargeability of debts incurred through false pretenses, a false representation, or actual fraud.[4] The Eighth Circuit has determined the standard to be used in finding fraud under 11 U.S.C. § 523(a)(2)(A). *See Ophaug v. Thul (In re Ophaug)*, 827 F.2d 340, 342 (8th Cir.1987). *Ophaug* holds that only actual fraud, and not fraud implied in law, satisfies section 523(a)(2)(A). *Id.* at 342 n. 1. In order to have a debt held nondischargeable under section 532(a)(2)(A), the creditor must prove that: (1) the debtor made representations; (2) at the time the representations were made the debtors knew them to be false; (3) the debtors made the representations with the intention or purpose of deceiving creditors or the Court; (4) there was reliance on those representations; and (5) injury was sustained as a result of those representations. *Id.* Both plaintiff and Marvin Johnson testified that plaintiff willingly loaned money to Mr. Johnson. She never asked him why he needed the funds. She never asked for any collateral. She never established any repayment terms. I cannot find debtor made any misrepresentations to plaintiff if both parties concur that debtor never made any representations at all. Mr. Johnson also testified that he intended to repay plaintiff with the proceeds of the farming operation. It was only when he was forced to stop farming that he filed bankruptcy. He further testified that Mrs. Johnson's health was a major factor in his deci-sion to cease farming and move into the city where Mrs. Johnson had easier access to medical treatment. Further, since plaintiff made no inquiry about why debtor needed money, she could not have relied on debtor's representations. For the reasons stated above, I find that Marvin Johnson did not obtain funds from plaintiff by false pretenses, false representation, or actual fraud.

### B. Breach of Fiduciary Duty

■ Section 523(a)(4) excepts from discharge any debt for fraud or defalcation while acting in a fiduciary capacity. 11 U.S.C. § 523(a)(4). Plaintiff claims that Marvin Johnson held her power of attorney during all the transactions which gave rise to the debt at issue, therefore, section 523(a)(4) excepts such debt from discharge. In bankruptcy settings, the term "fiduciary" has been narrowly construed to apply only to relationships involving technical or express trusts. *Barclays American/Business Credit v. Long (In re Long)*, 774 F.2d 875, 879 (8th Cir.1985); *Energy Products Engineering, Inc. v. Reuscher (In re Reuscher)*, 169 B.R. 398, 400 (S.D.Ill.1994). An express or technical trust may be either one in which a formal document is executed which establishes the rights and duties of the parties, or one in which trust-type obligations are imposed pursuant to statute or common law.[5] *Reuscher* at 400 (citations omitted). As a rule, the general fiduciary duty created by a power of attorney gives rise to an agency relationship, but does not give rise to the fiduciary capacity required by section 523(a)(4). *Rech v. Burgess (In re Burgess)*, 106 B.R. 612, 620 (Bankr.D.Neb.1989). However, "if the debtor has a sufficiently elevated level of fiduciary duty" section 523(a)(4) could apply to an agency relationship. *Wells Fargo Guard Service v. Myrick (In re Myrick)*, 172 B.R. 633, 636 (Bankr.D.Neb.1994); *Burgess* at 620. Such a fiduciary duty is found, for

---

4. Section 523(a)(2)(A) provides in relevant part as follows:

   (a) A discharge under section 727 ... does not discharge an individual debtor from any debt—
      (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

   (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. 11 U.S.C. § 523(a)(2)(A).

5. Both of these situations are to be distinguished from a constructive trust which has no existence until the wrong is committed. *Id.*

example, when one party to a fiduciary relationship is incapable of monitoring the other's behavior. *Reuscher,* 169 B.R. at 401. *See, In re Marchiando,* 13 F.3d 1111, 1116 (7th Cir.), *cert. denied sub nom. Illinois Dep't of Lottery v. Marchiando,* — U.S. ——, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994).

In *Burgess* the debtor's mother, Estelle Burgess, executed a power of attorney in favor of her son one week after her husband died. Mrs. Burgess gave her son the power to manage all of her assets and conduct all of her business affairs. The son subsequently "borrowed" funds from Mrs. Burgess's assets without her knowledge or consent. Ultimately, Mrs. Burgess became incapacitated and a conservator was appointed. When the son and his wife filed bankruptcy, the conservator of Mrs. Burgess's estate brought the dischargeability proceeding. *Burgess* at 614–17. The *Burgess* court found that the scope and nature of the agency relationship, and the facts and circumstances of the relationship between the parties, allowed the court to conclude that section 523(a)(4) was applicable. *Id.* at 620.

■ Here, there is no dispute that plaintiff and Mr. Johnson entered into a principal/agency relationship under state law when they executed POA I. 3 Am.Jur.2d § 23 at 528. However, plaintiff never gave up any control of her assets to debtor, nor did she give up management of her business affairs. She testified that she was competent at all times when loans were made, and she appeared to be most intelligent and competent at trial. Plaintiff also testified that she willingly made every loan requested by Johnson until he asked her to mortgage her farm. Each time debtor asked her to borrow bank funds, for his benefit, plaintiff dealt directly with the bank and authorized payment of the funds to debtor. When debtor wanted plaintiff to borrow additional funds secured by her farm he approached her, and she refused to do so. Neither party contends that Mr. Johnson ever used a power-of-attorney to obtain funds without plaintiff's knowledge and consent. Thus, the loans made were not made because of any actions or representations of the debtor while acting in a fiduciary capacity. Instead, they were made because debtor asked to borrow and plaintiff agreed to lend.

■ The exception to discharge in section 523(a)(4) is not intended to serve as a protection to creditors who make ill-advised loans, absent fraud or misrepresentation. The debtor here did not commit fraud or defalcation, and did not use a fiduciary capacity to cause plaintiff to make these loans. Therefore, the obligation to plaintiff is dischargeable.

### C. Constructive Trust

■ In order to obtain a constructive trust over property, the plaintiff must (1) show wrongdoing in the acquisition of the property, and (2) be able to trace the wrongfully held property. *Chiu v. Wong, (In re Wong),* 16 F.3d 306, 310 (8th Cir.1994). *See also, United States Department of Energy v. Seneca Oil Company (in re Seneca Oil Co.),* 906 F.2d 1445, 1450 (10th Cir.1990). Plaintiff did not demonstrate any wrongdoing by Marvin Johnson in the acquisition of the property. Plaintiff failed to prove either fraud or misrepresentation. She simply made a bad loan without taking any collateral. The Sixth Circuit recently found that "constructive trusts are anathema to the equities of bankruptcy since they take from the estate, and thus directly from competing creditors, not from the offending debtor." *XL Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.),* 16 F.3d 1443, 1452 (6th Cir.1994). Thus, granting plaintiff a constructive trust would allow her to "lop off a piece of the estate under a constructive trust theory ... [and] circumvent completely the Code's equitable system of distribution." *Id.* at 1453.

The Bankruptcy Code grants the trustee priority over unsecured creditors. 11 U.S.C. § 544. Since plaintiff has not established any equitable basis for granting her a status higher than that to which she is entitled by law, the request for constructive trust must be denied. Therefore, as to that issue, I find in favor of defendant Jere L. Loyd, Chapter 7 Trustee.

An Order in accordance with this Memorandum Opinion will be entered this date.