In re Walter J. CLAYTON, Jr., Debtor.

Edward J. SULLIVAN, Plaintiff,

v.

Walter J. CLAYTON, Jr., Defendant.

Bankruptcy No. 95–15492DAS.
Adv. No. 95–0854DAS.

United States Bankruptcy Court,
E.D. Pennsylvania.

May 9, 1996.

Eric L. Frank, Miller, Frank & Miller, Philadelphia, PA, for Debtor.

Edmund K. John, Malvern, PA, Norman L. Haase, Media, PA, Co–Counsel, for Plaintiff.

Christine C. Shubert, Tabernacle, NJ, Trustee.

Paul B. Maschmeyer, Ciardi, Maschmeyer & Karalis, P.C., Philadelphia, PA, for Trustee.

Martha Johnson, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, PA, for Kathryn K. Clayton and Claymark Distribution Services, Inc. In Adv. No. 96–0355DAS.

Richard Norman Lipow, Malvern, PA, for Creditor J.R. Carroll, Inc.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, PA.

## OPINION

DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

The parties to the above-captioned adversary proceeding ("the Proceeding") present, at this juncture in the Proceeding, the issue of whether punitive damages and pre-judgment and post-judgment interest should be included within the nondischargeable amount of debt based on a judgment for compensatory damages which WALTER J. CLAYTON, JR. ("the Debtor") now concedes is nondischargeable under 11 U.S.C. § 523(a)(2)(A). Because we believe that it is generally not the function of this court to liquidate damages in dischargeability proceedings, and we choose to follow the emerging majority view that no provisions of § 523(a) preclude nondischargeability of punitive damage awards, we conclude that the claim of EDWARD J. SULLIVAN ("the Plaintiff") against the Debtor for punitive damages and most probably only post-judgment interest, as well as compensatory damages, is nondischargeable in the Debtor's bankruptcy case. We decline, however, the Plaintiff's invitation to effectively mold his state court judgment against the Debtor to include pre-judgment interest, believing that this task is one of liquidation which is more properly within the domain of the state court that issued the judgment.

### B. FACTUAL AND PROCEDURAL HISTORY

The Debtor filed the underlying voluntary Chapter 7 bankruptcy case on July 18, 1995. On November 7, 1995, fixed in that case as the deadline for filing objections to the Debtor's discharge or the dischargeability of any indebtedness, the Plaintiff filed the Proceeding, objecting to the Debtor's receipt of a discharge generally and the dischargeability of his own particular claim. Another challenge to dischargeability was also filed that day by another creditor, J.R. Carroll, Inc. ("the Carroll Proceeding").

The complaint in the instant Proceeding ("the Complaint") included eleven Claims or

Counts, the first six of which asserted grounds for denial of discharge under various subsections of 11 U.S.C. § 727(a). The remaining five Claims requested that the Debtor be denied a discharge of only certain debts alleged to be owed to the Plaintiff under the provisions of 11 U.S.C. § 523(a). The seventh Claim requests that a portion of a $140,000 state court judgment awarding compensatory damages against the Debtor for breach of contract and fraud be ruled nondischargeable under § 523(a)(2)(A). In the eighth and ninth Claims, the Plaintiff contended that the Debtor was liable for and should be denied discharge of a $2,000,000 portion of the same state court judgment entered against co-defendant Claymark Distribution Services, Inc. ("CDS"), as a fiduciary of the Plaintiff, pursuant to 11 U.S.C. § 523(a)(4). The tenth Claim asserted that a $500,000 portion of the judgment against the Debtor reflecting punitive damages should also be deemed nondischargeable under 11 U.S.C. § 523(a)(6). Finally, in the eleventh Claim, the Plaintiff contended that he was entitled to pre-judgment and post-judgment interest on the indebtednesses to him, which he also alleged was nondischargeable.

On March 21, 1996, the date that this Proceeding and the Carroll Proceeding were both scheduled for trial on a must-be-tried basis, the parties informed us that they had agreed that the Carroll Proceeding would be withdrawn, and that the parties to the Proceeding had reached some agreements regarding the procedure for its disposition. First, they stated that the Plaintiff was withdrawing Claims one through six of the Complaint, challenging the Debtor's general discharge, and that they desired to present the seventh, tenth and eleventh Claims to us on a stipulated record with briefs. As to the eighth and ninth Claims, which stated fiduciary claims in reference to the liability of CDS to the Plaintiff, the parties wished to defer their presentation on these claims and consolidate them with another adversary proceeding which the Plaintiff had filed in this court on March 18, 1996, against the Debtor, CDS, the Debtor's Wife Kathryn ("Kathryn"), and Penntech Transfer Corporation ("Penntech"). That proceeding is now listed for trial on July 18, 1996. We acceded to the parties' request and agreed to decide only

the seventh, tenth, and eleventh Claims on a fact stipulation, opening briefs filed by April 11, 1996, and reply briefs filed by April 22, 1996.

Pursuant to Federal Rules of Bankruptcy Procedure 7041 and 9019, we required the parties to notice all interested parties of the dismissal of the Carroll Proceeding and the first six Counts of the Proceeding. Receiving no objections after notice to all interested parties, we dismissed these claims in Orders of April 30, 1996.

The fact stipulation, timely submitted by the parties, provides that, in February 1990, the parties entered into an oral partnership agreement to acquire a license from the Thomas J. Lipton Company ("Lipton") to market a fruit juice called "The Big Squeeze." With the assistance of the Plaintiff, the Debtor did obtain the license. However, instead of continuing to hold it jointly with the Plaintiff in accordance with the partnership agreement, the Debtor had the license assigned to CDS, an entity which he alone controlled. Once the license was assigned to CDS, the Debtor allegedly attempted to deny the Plaintiff his interest in the license pursuant to the partnership agreement.

On or about November 9, 1990, predicated On the Debtor's alleged misappropriation of the Lipton licensing agreement, the Plaintiff filed a civil action against the Debtor and CDS in the Delaware County (PA.) Court of Common Pleas ("the C.C.P."). In that law suit ("the C.C.P. Suit"), the Plaintiff set forth causes of action for breach of contract and fraud against the Debtor, as well as claims for intentional interference with business relationships and conspiracy against CDS. The C.C.P. Suit was tried before a jury from March 30, 1992, to April 3, 1992. On the latter date, the jury returned verdicts against the defendants. On its verdict sheet, the jury found that (1) the Debtor entered into and breached a partnership agreement with the Plaintiff; (2) the Debtor committed fraud against the Plaintiff with respect to the partnership agreement; and (3) CDS intentionally interfered with the partnership agreement between the parties. As a consequence of these findings, the jury awarded the Plaintiff compensatory damages of $140,-

000 against the Debtor for "loss[es] to date," and punitive damages in the amount of $500,-000. The jury further found CDS liable to the Defendant in the amount of $2,000,000 for his loss of future profits.

Following unsuccessful post-trial motions of the Debtor, the C.C.P., on September 17, 1993, entered judgment in favor of the Plaintiff and against the Debtor in the amount of $640,000 and against CDS in the amount of $2 million. Although the Debtor and CDS filed appeals to the Superior Court of Pennsylvania from these judgments, these appeals were subsequently discontinued on September 24, 1994.

In his briefs, the Plaintiff argues that the entire $640,000 judgment is nondischargeable, contending that the combined effect of the collateral estoppel from the C.C.P. judgment and § 523(a)(6) preclude the discharge of the punitive damage portion of the judgment. In addition, he urges this court to find that he is entitled to pre-judgment and post-judgment interest measured at six (6%) percent per annum on the C.C.P. judgment, which is also nondischargeable.

The Debtor concedes the applicability of collateral estoppel and acquiesces to the nondischargeability of the $140,000 award for actual damages based on fraud pursuant to § 523(a)(2)(A). He argues, however, that punitive damage awards are dischargeable as a matter of law because they are not compensation "to the extent . obtained by," § 523(a)(2)(A), an "injury by the debtor," per § 523(a)(6). Alternatively, he argues that, if punitive damage awards are potentially nondischargeable under either Code section, the present record does not support a finding of nondischargeability of the $500,000 award in issue, and that we must conduct a trial ourselves before concluding that this sum is nondischargeable, citing *In re Scheuer*, 125 B.R. 584, 593–94 (Bankr.C.D.Cal.1991). Finally, in his post-trial reply brief, the Debtor argues that, as to damages awarded in a tort action such as the C.C.P. Suit, the Plaintiff is not entitled to pre-petition interest.

## C. DISCUSSION

### 1. THIS COURT'S PRIOR HOLDINGS THAT, IN DISCHARGEABILITY LITIGATION, WE SHOULD USUALLY ONLY DETERMINE DISCHARGEABILITY AND ALLOW NONBANKRUPTCY COURTS TO LIQUIDATE NONDISCHARGEABLE OBLIGATIONS SUPPORTS THE CONCLUSION THAT NONBANKRUPTCY COURTS SHOULD BE FREE TO MEASURE ALL ASPECTS OF DAMAGES FROM NONDISCHARGEABLE OBLIGATIONS, INCLUDING AWARDING PUNITIVE DAMAGES AND ASSESSING DAMAGES.

We begin our analysis by quotation of the two Code sections in issue, 11 U.S.C. § 523(a)(2)(A), (a)(6), plus another section cited in the analysis of the Debtor, 11 U.S.C. § 523(a)(7), as follows:

(a) A discharge under section 727 ... does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud ...

\* \* \* \* \* \*

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

(7) to the extent such debt is a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss; ...

As our subsequent discussion will indicate, courts have differed in their conclusions as to whether punitive damages are dischargeable under § 523(a)(2)(A), and as to whether they are rendered dischargeable or nondischargeable by effect of § 523(a)(6). Before analyzing the various decisions, we will offer what we believe is an approach which is simple yet different from that suggested in any of the cases cited, in resolution of these issues. This approach results from the following general principle enunciated by us most recently in *In re Cohen*, 1995 WL 346948, at \*3 (Bankr.E.D.Pa. June 5, 1995):

The role of a bankruptcy court in a dischargeability proceeding is merely to determine whether certain claims are dischargeable or not, not to liquidate those claims. *See In re Stelweck*, 86 B.R. 833, 844–45 (Bankr.E.D.Pa.1988), *aff'd sub nom. United States v. Stelweck*, 108 B.R. 488 (E.D.Pa.1989). The task of liquidation falls to nonbankruptcy courts, . . .

*Accord, e.g., In re Shapiro*, 188 B.R. 140, 149 (Bankr.E.D.Pa.1995) (FOX, J.); and *In re Kelley*, 163 B.R. 27, 33 (Bankr.E.D.N.Y. 1993).

■ It seems to us that the assessment of punitive damages and interest by the C.C.P. or other applicable non-bankruptcy courts is simply an aspect of the liquidation of claims which the Debtor has conceded are nondischargeable. This task should be left to the C.C.P. or other courts in the state court system, unless it can be said that some supervening provision of § 523(a) or elsewhere in the Code precludes the assessment of a certain type of damages. As a corollary to the foregoing, we also believe that, generally, a bankruptcy court should not enhance any aspect of the nonbankruptcy court's liquidation process, as in the case of the imposition of interest. Therefore, in the context of this instant controversy, we are inclined to let the C.C.P. or other appropriate state courts determine whether pre-petition or post-petition interest is collectible as an aspect of the C.C.P. judgment, refraining from opining as to its propriety except to say that the Code offers no directives on the matter.

While, technically, this result flows from § 523(a)(2)(A), not § 523(a)(6), only the latter of which is specifically invoked by the Plaintiff, we are not troubled by reaching this result on the present record. Clearly, the Plaintiff could simply amend his Complaint to specifically invoke § 523(a)(2)(A) as to the award of punitive damages, to the extent that the particular Code section relied upon is significant. *See In re Cohen*, 139 B.R. 327, 332–35 (Bankr.E.D.Pa.1992).

This conclusion leaves us with only one issue to determine: whether any provisions of the Code preclude the award of punitive damages or interest to the Plaintiff. This inquiry requires us to examine the conflicting caselaw cited to us by the parties regarding the dischargeability of punitive damages under §§ 523(a)(2)(A) and (a)(6). However, we do so from an initial perspective skeptical of interpretations of the Code which would involve bankruptcy courts in the process of liquidation of nondischargeable debts.

Moreover, since the C.C.P. judgment admittedly renders the Debtor's obligation to the Plaintiff nondischargeable on the basis of § 523(a)(2)(A), the Debtor is not entitled to a rehearing in this court on the dischargeability of the punitive damage component of that obligation in the manner permitted by the *Scheuer* court. To become involved in only the penalty phase of completed litigation of a nondischargeable obligation, as the *Scheuer* court suggests, would constitute intermeddling rather than exercising our power to do equity.

2. *THE RECENT WEIGHT OF AUTHORITY SUPPORTS THE CONCLUSION THAT NEITHER § 523(a)(2)(A) NOR § 523(a)(6) PRECLUDE PUNITIVE DAMAGE AWARDS ARISING FROM NONDISCHARGEABLE DEBTS FROM BEING NONDISCHARGEABLE AS WELL.*

■ The Plaintiff posits, in his tenth Claim, that the combined effect of collateral estoppel from the C.C.P. judgment and § 523(a)(6) require us to conclude that the $500,000 punitive damage award by the C.C.P. is nondischargeable. The Debtor counters that the language of § 523(a)(2)(A) precluded a punitive damage award based on that Code section, and that the record before us is inconclusive as to the Plaintiff's rights regarding nondischargeability of this award under § 523(a)(6). We disagree, in part, with both parties. We believe that, while § 523(a)(6) does not preclude a punitive damage award from being declared nondischargeable, the instant record does not support a declaration of that award's nondischargeability as a matter of law under § 523(a)(6). However, not only do we disagree with the Debtor's contention that § 523(a)(2)(A) precludes a punitive damage award from being declared nondischargeable, but also we conclude that awarding punitive damages was such an integral part

of the process of liquidation of the nondischargeable indebtedness of the Debtor to the Plaintiff that it cannot be collaterally attacked, even though the Plaintiff failed to specifically invoke § 523(a)(2)(A) as to the punitive damage award in his Complaint.

Turning first to § 523(a)(2)(A), we note that the majority of the earliest decisions on the issue, *e.g., In re Suter,* 59 B.R. 944, 946–47 (Bankr.N.D.Ill.1986), supported the proposition that punitive damage portions of debts subject to nondischargeability under § 523(a)(2)(A) are dischargeable. *See In re Van Quach,* 187 B.R. 615, 622 (Bankr.N.D.Ill. 1995); and *In re Friedlander,* 170 B.R. 472, 480 (Bankr.D.Mass.1994). However, the decisions in, *e.g., In re St. Laurent,* 991 F.2d 672, 677–78 (11th Cir.1993); *In re Cohen,* 191 B.R. 599, 608–09 (D.N.J.1996); and *Friedlander, supra,* 170 B.R. at 480, reflect an emerging tendency towards the erstwhile minority position of allowing punitive damage awards to be declared nondischargeable as well.

It is notable that the only Court of Appeals decision which support the former majority position, as an alleged counterpoint to *St. Laurent,* is *In re Levy,* 951 F.2d 196, 198–99 (9th Cir.1991). *Levy,* however, merely holds that § 523(a)(2)(A) "does not preclude discharge of punitive damages," *id.* at 198, supported, to a substantial degree by a footnoted statement in *Grogan v. Garner,* 498 U.S. 279, 282 n. 2, 111 S.Ct. 654, 656 n. 2, 112 L.Ed.2d 755 (1991), that "punitive damage awards are more appropriately governed by § 523(a)(6)." *Levy,* like *Grogan,* therefore suggests the position that punitive damage awards may be nondischargeable under § 523(a)(6), if not under § 523(a)(2)(A), even when the underlying dischargeability arises under § 523(a)(2). This result is cold comfort to a debtor desiring to avoid nondischargeability of a punitive damage award under all applicable Code sections. Moreover, the result in *Grogan* was apparently effectively a reinstatement of a bankruptcy court decision that a jury verdict including punitive damages, 498 U.S. at 281, 111 S.Ct. at 656, was nondischargeable in its entirety in a proceeding based upon § 523(a)(6). *See In re Garner,* 881 F.2d 579, 580 (8th Cir.1989), *rev'g,* 73 B.R. 26, 27 (Bankr.W.D.Mo.1987), *rev'd sub nom. Grogan v. Garner, supra.*

Turning secondly to § 523(a)(6), it is clearly recognized, as supported by the statements in *Grogan, supra,* 498 U.S. at 282 n. 2, 111 S.Ct. at 656 n. 2, that

> [t]he vast majority of courts to address this issue have held that punitive damages are nondischargeable under § 523(a)(6). *See, e.g., In re Miera,* 926 F.2d 741 (8th Cir.1991); *In re Britton,* 950 F.2d 602 (9th Cir.1991); *In re Adams,* 761 F.2d 1422 (9th Cir.1985); *Reynolds–Marshall v. Hallum,* 162 B.R. 51 (D.Me.1993); *In re Dahlstrom,* 129 B.R. 240 (Bankr.D.Utah 1991).[2]

2. This list is by no means all-inclusive. *See In re Dahlstrom,* 129 B.R. at 244, for a more comprehensive listing of courts that have adopted a majority positions.

*In re Benson,* 180 B.R. 796, 800 (Bankr. W.D.Pa.1995). *See also, e.g., In re McNallen,* 62 F.3d 619, 626–27 (4th Cir.1995); *In re Bugna,* 33 F.3d 1054, 1058–59 (9th Cir.1994); and *In re Marks,* 192 B.R. 379, 386–87 (E.D.Pa.1996).

Despite this seemingly overwhelming embrace of a principle which would apparently render the debate over whether punitive damages are dischargeable under § 523(A)(2)(A) moot, and which may have motivated the Plaintiff's emphasis on § 523(a)(6) in his tenth Claim, we must sound a cautionary note. The Third Circuit Court of Appeals has not spoken on the issue of whether punitive damages are generally dischargeable under § 523(a)(2)(A) or § 523(a)(6). Moreover, in *In re Conte,* 33 F.3d 303, 305–09 (3d Cir.1994), that court reversed a determination that a malpractice claim against an attorney which yielded a jury verdict of $520,000 in compensatory damages *and $1 million in punitive damages* was nondischargeable under § 523(a)(6). In so holding, the court stated that "more than recklessness" must be shown for a § 523(a)(6) plaintiff to succeed, and that

> actions are willful and malicious within the meaning of § 523(a)(6) if they either have a purpose of producing injury or have a substantial certainty of producing injury.

33 F.3d at 307.

While *Conte* represents an easier burden for a § 523(a)(6) plaintiff than that which this court outlined in *In re Gaebler,* 83 B.R. 264,

267 (Bankr.E.D.Pa.), *rev'd,* 88 B.R. 62 (E.D.Pa.1988); and *In re Lane,* 76 B.R. 1016, 1028 (Bankr.E.D.Pa.1987), it did result in our citation of *Conte* as authority for refusal to declare an obligation which included a punitive damage award to the plaintiff nondischargeable in *In re Grubb, DeMarco v. Grubb,* Bankr. No. 95–12946DAS, Adv. No. 95–0656 (Bankr.E.D.Pa. Dec. 14, 1995), *aff'd,* C.A. No. 96–492, 1996 WL 230019 (E.D.Pa. May 3, 1996). As in *Grubb,* we see nothing in the C.C.P. record which reflects the requisite explicit finding, by the jury or the C.C.P. court here, that the Plaintiff was expressly found to have engaged in conduct which was both willful and malicious towards the Plaintiff.

In light of *Conte,* we therefore consider it an overbroad inaccuracy to equate an award of punitive damages with automatic nondischargeability under § 523(a)(6), as many of the foregoing cases appear to have done. To the extent, however, that these cases overcome the holdings of cases embracing the minority viewpoint, such as *In re Van Loan,* 114 B.R. 760, 763 (Bankr.M.D.Fla.1990); and *In re Alwan Bros. Co.,* 105 B.R. 886, 890 (Bankr.C.D.Ill.1989), that § 523(a)(6) cannot ever serve as a basis for declaring punitive damages nondischargeable, we agree with them.

Thus, we conclude that the language of neither § 523(a)(2)(A) nor § 523(a)(6) precludes a declaration that punitive damages are nondischargeable, at least in certain circumstances. We therefore find no statutory impediment, in these Code sections, to our conclusion that punitive damages are a permissible aspect of a nonbankruptcy court's liquidation of a nondischargeable debt. *Cf. McNallen, supra,* 62 F.3d at 627; *Miera, supra,* 926 F.2d at 745; and *Adams, supra,* 761 F.2d at 1427–28 (all holding that punitive damages awards are nondischargeable if they stemmed from the same conduct giving rise to nondischargeable compensatory damages).

3. *THE LEGISLATIVE HISTORY OF THE CODE SUGGESTS THAT PUNITIVE DAMAGES ARE NOT PRECLUDED FROM NONDISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(2)(A) OR § 523(a)(6).*

■ Finally, we believe that our conclusion that, in this context, the punitive damages awarded to the Plaintiff are nondischargeable is supported by an analysis of the historical treatment of punitive damage awards in dischargeability litigation. The Debtor suggests that the historical maxim that exceptions to discharge are to be narrowly construed against creditors, *see, e.g., Gleason v. Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915), supports his position that § 523(a) should not be read to except punitive damages from discharge, at least in this context. Specifically, the Debtor asserts that punitive damages are not "debts," as required by § 523(a)(2)(A), or compensation for "injury," as required by § 523(a)(6). The Debtor, moreover, emphasizes that, in § 523(a)(7), Congress specifically carved out an exception to discharge for nonpecuniary debts for fines, penalties, and forfeitures due government agencies, thereby demonstrating by negative implication that the other subsections of § 523(a) should not encompass punitive damages.

Although the Plaintiff's position might be supportable as homage to the "trendy" principle of sometimes-contrived strict construction of the language of the Code without reference to legislative history, *see, e.g., Patterson v. Shumate,* 504 U.S. 753, 757, 112 S.Ct. 2242, 2246, 119 L.Ed.2d 519 (1992); and *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989), we reject this conclusion for several reasons. First, we find any references to limitations on damages in the language of §§ 523(a)(2)(A) and (a)(6) obscure at best. Secondly, the legislative history, such as there is, strongly suggests that Congress intended punitive damages to be at least potentially nondischargeable under any of the subsections of § 523(a).

Our historical analysis begins with section 17a of the Act, 11 U.S.C. § 35a (repealed), which was the precursor of § 523(a) of the Code. *See Brown v. Felsen,* 442 U.S. 127, 128 n. 1, 99 S.Ct. 2205, 2207 n. 1, 60 L.Ed.2d 767 (1979) ("[d]ischarge provisions substantially similar to § 17 of the Bankruptcy Act appear in § 523 of the new law"); and 3 COLLIER ON BANKRUPTCY, ¶ 523.07, at 523–48 (15th ed. 1995) ("[s]ection 523(a)(2) is

derived, without slight modification, from Section 17a(2) of the Bankruptcy Act"). Section 17a designated the types of debts nondischargeable in cases under the Act. Not unlike the Code, it included as nondischargeable

> debts ... [that] (2) are liabilities for obtaining money or property by false pretenses or false representations, ... or for willful and malicious conversion of the property of another; ... (8) are liabilities for willful and malicious injuries to the person or property of another other than conversion as excepted under clause (2) of this subdivision.

The exceptions to discharge under the Act were interpreted as including all liabilities resulting from nondischargeable conduct. As a leading case on the issue stated:

> The statutory exception which measures nondischargeability is "... for liabilities ... for willful or malicious injuries to the person or property of another...." The exception is measured by the nature of the act, *i.e.*, whether it was one which caused willful and malicious injuries. All liabilities resulting therefrom are non-dischargeable. One liability is limited to actual compensation, presumably out of pocket expense, loss of profits, and other provable damages. But for this type of conduct, yet another liability may be incurred if the jury under proper instructions sees fit to award it. That is for punitive damages. Both types of liability are within the statute as "liabilities" for "willful or malicious injuries to the person or property of another."

*Coen v. Zick,* 458 F.2d 326, 329–30 (9th Cir. 1972). *Accord, National Homes Corp. v. Lester Industries, Inc.,* 336 F.Supp. 644 (W.D.Va.1972); *In re Cummings,* 3 B.C.D. (CRR) 908 (Bankr.W.D.Mo.1977); and *In re Webster,* 1 B.R. 61 (Bankr.E.D.Va.1979).

When the Bankruptcy Commission ("the Commission") reviewed the Bankruptcy Act in the early 1970s it specifically considered the dischargeability of punitive damages. The Commission recognized that dischargeability of punitive damages was tied to the dischargeability of compensatory damages, and that, when the latter were nondischargeable, the former should be also. EXECU-TIVE DIRECTOR, COMMISSION ON THE BANKRUPTCY LAWS OF THE UNITED STATES, REPORT OF THE COMMISSION ON THE BANKRUPTCY LAWS OF THE UNITED STATES, H.R. Doc. No. 137, 93rd Cong., 1st Sess., Pt. II, at 141 (July 1973), *reprinted in* 2 APPENDIX COLLIER ON BANKRUPTCY ("the Commission Report"). It is submitted that the Commission drafted the dischargeability provisions of the model bankruptcy statute it submitted to Congress with this interpretation in mind.

A discussion of the dischargeability of punitive damages arose in the course of the Commission's recommendation that the new bankruptcy statute include an exception to discharge for fines. The Commission explained that since it recommended the abandonment of the Act concept of "provability," in which certain "nonprovable debts," such as fines, were not affected by the bankruptcy laws and not discharged, a new nondischargeability provision was necessary to prevent the discharge of these debts. In commenting upon the proposed new provision mandating that fines be nondischargeable, the Commission, in its Report, at 141, stated:

> The general rule seems to be that the dischargeability of punitive damages follows the dischargeability of the debt for compensatory damages that arises from the same course of conduct. *Coen v. Zick,* No. 25,614 & 25,620[, 458 F.2d 326] (U.S.Ct.App., 9th Cir. Apr. 3, 1972); *Wilcox v. Rohr,* 81 Cal.App.2d 312, 183 P.2d 916 (1947).
>
> ... This clause [referring to the new clause to except fines from discharge] denies dischargeability only to a fine for the benefit of a governmental unit. All other nonpecuniary debts, including a fine payable to a governmental unit but for the benefit of a private individual, are to be discharged unless they are expressly nondischargeable under another clause of this subdivision, *or as considered in the preceding paragraph, arise from the same course of conduct as compensatory damages that are nondischargeable* (emphasis added).

With these comments, the Commission not only confirmed its understanding that punitive damages were nondischargeable, but

also it placed into proper perspective the discharge exception for fines. These comments indicate that the exception for fines should not be read as implying that other nonpecuniary debts are completely dischargeable. To the contrary, the comments explicitly state that punitive damages may be nondischargeable where they fall within the parameters of other exceptions to discharge.

The Bankruptcy Reform Act of 1978 was drafted against the backdrop of the Commission Report. Congress ultimately adopted the Commission's recommendation with respect to dropping the concept of "provability" and adding a nondischargeability provision for fines.

Based on this history, we conclude that Congress drafted § 523(a) with knowledge of the Commission Report and an awareness of the Commission's mindset that punitive damages should be nondischargeable when imposed for a reason within the purview of any of the discharge exceptions. At the very least, when Congress enacted the Bankruptcy Code, it gave no sign that it was retreating from the established practice of allowing for the discharge of these damages. This historical analysis contradicts the assertions in *Alwan Bros., supra*, 105 B.R. at 891, that Congress did not intend to include punitive damages among the categories of nondischargeable obligations. It supports the conclusion that no Code sections were intended to preclude nondischargeability of a punitive damage award. Most importantly, consistent with our reasoning, it authorizes nonbankruptcy courts to include punitive damages among the components of damages which may be liquidated by nonbankruptcy courts in reference to nondischargeable obligations of the Debtor.

4. *THE DEBTOR IS LIABLE ONLY FOR ONLY SUCH INTEREST AS IS ALLOWED BY APPLICABLE NON-BANKRUPTCY COURTS IN THE LIQUIDATION OF THE NONDIS-CHARGEABLE OBLIGATIONS IN ISSUE, AND NOT TO ANY SPE-CIAL AWARD OF PRE-JUDG-MENT INTEREST.*

▇▇▇ Consistent with this court's holding that the Plaintiff is entitled to nondischarge-

ability of all sums liquidated as damages in connection with its nondischargeable fraud claim against the Debtor is the general rule that sums such as interest, which are ancillary to a nondischargeable debt, are also nondischargeable. *See, e.g., In re Hunter,* 771 F.2d 1126, 1131–32 (8th Cir.1985); *In re Levitsky,* 137 B.R. 288, 291–92 (Bankr. E.D.Wis.1992); and *In re Foster,* 38 B.R. 639, 640 (Bankr.M.D.Tenn.1984).

In this regard, we note that the Debtor has conceded his liability for post-judgment interest on any debts found to be nondischargeable by this court. However, the Debtor appears to have merit in his contention that the Plaintiff's request for pre-judgment interest is misplaced in the context of litigation of an unliquidated tort claim. We agree with the Debtor that the Plaintiff's pursuit of such interest effectively constitutes a tardy request for delay damages under applicable Pennsylvania Rule of Civil Procedure 238, which should have been presented to the state court within ten days of the jury verdict. The absence of evidence on this record that the Plaintiff asked the state court for delay damages appears to lead to the conclusion that any claim which he may have had for pre-judgment interest has been waived. *See Brocklehurst v. Watson,* 409 Pa.Super. 1, 597 A.2d 631 (1991), *appeal denied,* 531 Pa. 644, 612 A.2d 983 (1992).

### D. CONCLUSION

This court will proceed to enter an Order indicating that all aspects of the Plaintiff's C.C.P. judgment for $640,000 against the Debtor resulting from the jury verdict of April 3, 1992, is nondischargeable, and that only such interest as may legally accrue thereon, as determined by the applicable state courts, may be added thereto.

### ORDER

AND NOW, this 9th day of May, 1996, upon consideration of the Fact Stipulation for Determination of Seventh, Tenth and Eleventh Claims Set Forth in Plaintiff's Complaint in the above proceeding, and the respective opening and reply briefs of the parties addressing the matters at issue, it is hereby ORDERED AND DECREED as follows:

1. Judgment is entered in part in favor of EDWARD J. SULLIVAN ("the Plaintiff") and against WALTER J. CLAYTON, JR. ("the Debtor").

2. The entire indebtedness of the Debtor to the Plaintiff, constituting the $640,000 judgment awarded to the Plaintiff by the Court of Common Pleas of Delaware County (PA.), including both compensatory and punitive damages, is DECLARED to be NON-DISCHARGEABLE.

3. In addition, the Debtor is liable to the Plaintiff for all interest allowable on the aforesaid judgment under applicable state law.

4. A status conference to determine the status or final disposition of the eighth and ninth Claims set forth in the Complaint, as well as to consider the status of Adv. No. 96–0355 and the jury-demand issues which may be raised therein, is scheduled on

THURSDAY, JUNE 13, 1996, at 9:30 A.M. and shall be held in Bankruptcy Courtroom No. 4 (Room 3620), Third Floor, United States Court House, 601 Market Street, Philadelphia, PA 19106.