**In re Walter J. CLAYTON, Jr., Debtor.**

**Edward J. SULLIVAN, Plaintiff,**

v.

**Walter J. CLAYTON, Jr., Defendant.**

**Bankruptcy No. 95–15492DAS.**
**Adversary No. 95–0854DAS.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Aug. 1, 1996.

Kevin J. Carey, Mesirov Gelman Jaffe Cramer & Jamieson, Philadelphia, PA, for Mediator.

Eric L. Frank, Miller, Frank & Miller, Philadelphia, PA, for Debtor.

Edmund K. John, Malvern, PA, Norman L. Haase, Media, PA, for Plaintiff Edward J. Sullivan.

Marvin Krasny, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, PA, for Kathryn Clayton & Penntech Transfer Corp.

Christine C. Shubert, Tabernacle, NJ, Paul B. Maschmeyer, Ciardi, Maschmeyer & Karalis, P.C., Philadelphia, PA, for Trustee.

Richard Norman Lipow, Malvern, PA, for Creditor J.R. Carroll, Inc.

Frederic Baker, Ass't U.S. Trustee, Philadelphia, PA, for U.S. Trustee.

## OPINION

DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

Presently before us in the above-captioned dischargeability proceeding ("the Proceeding") are cross-motions of the Plaintiff, EDWARD J. SULLIVAN ("the Creditor"), and the Defendant–Debtor, WALTER J. CLAYTON, JR. ("the Debtor"), for summary judgment in their favor as to the two Claims ("the Claims") remaining undecided in the Proceeding. The Claims assert two causes of action based on 11 U.S.C. § 523(a)(4). In the first, the Creditor seeks to deny the Debtor a discharge of a $2 million judgment entered against a corporation which was owned and managed by the Debtor and his wife Kathryn ("Kathryn"), Claymark Distribution Services, Inc. ("CDS"), on the theory that the Debtor, as a director and the President of CDS, was a "de facto fiduciary" of the monies CDS owed to the Creditor. In the second, the Creditor seeks to hold the Debtor jointly responsible with CDS for the $2 million on the ground that the Debtor is chargeable with "embezzlement, or larceny."

We conclude that the Creditor has failed to allege that he was the victim of any alleged fraud, defalcation, embezzlement, or larceny of the Debtor. Alternatively, with respect to the fiduciary capacity claim, we find that the Creditor's ability to prove only the Debtor's status as an officer of CDS at a time when it was possibly insolvent does not state a cause of action as to it under § 523(a)(4). We therefore will proceed to grant the Debtor's motion for summary judgment as to the Claims in issue.

### B. FACTUAL AND PROCEDURAL HISTORY

The facts of this case were set forth in this court's opinion of May 9, 1996, in which we described the withdrawal of the Creditor's challenges to the Debtor's general discharge and declared that the Creditor's entire $640,-000 verdict against the Debtor, including an award of punitive damages, was non-dischargeable. *In re Clayton,* 195 B.R. 342, 344, 346–50 (Bankr.E.D.Pa.1996) (*"Clayton I "*). Since that date, resolution of the two Claims remaining in the Proceeding has followed the course of Adversary No. 96–0355, the other proceeding described in that decision ("Adv. 355"), *id.* at 344, which is a challenge of alleged fraudulent conveyances of the assets of CDS and the Debtor to Kathryn and another corporation allegedly owned and operated mostly by Kathryn, Penntech Transfer Corporation ("Penntech").

At the status hearing of June 13, 1996, scheduled in the Order accompanying *Clayton I,* 195 B.R. at 351, we appointed Kevin J. Carey, Esquire, as mediator ("the Mediator") to attempt to reach a global resolution among the parties; requested briefs, on or before June 28, 1996, addressing the legitimacy of a jury trial demand in Adv. 355 by Kathryn

and Penntech; and established a briefing schedule on the anticipated instant summary judgment motions, to be completed by July 19, 1996.

In a memorandum reported at 1996 WL 387719 (Bankr.E.D.Pa. July 10, 1996) (*"Clayton II"*), we addressed principally the legitimacy of the above-referenced jury trial demands. We basically agreed to strike the jury demands if and only if the Creditor agreed to strike certain prayers for relief which we believed were probably legal, as opposed to equitable, in nature, and we scheduled a hearing on any motion to amend the complaint to strike the legal prayers and a report from the Mediator on July 25, 1996.

On the latter date, we learned that the Creditor declined our invitation to further amend the Complaint in Adv. 355 to preclude the jury trial, and that the Mediator would first convene the parties on July 30, 1996. In an accompanying Order, consistent with the parties' agreements on July 25, 1996, we continued the status hearing on the Mediator's progress until August 13, 1996; set down a Pre-trial Order in Adv. 355 contemplating completion of discovery and an exchange of witness lists and exhibits by October 4, 1996; and set forth a briefing schedule for an anticipated motion for summary judgment in a new related proceeding, Adversary No. 96–0908, to be completed by August 30, 1996, adding a provision that any necessary trial in that proceeding was continued to September 19, 1996. We then set about ascertaining whether we could decide the Claims in the instant Proceeding on the cross-motions for summary judgment without a trial (which had been tentatively scheduled for September 19, 1996, if necessary). We conclude herein that we can in fact decide the Claims in the Debtor's favor on the basis of the cross-motions.

The facts pertinent to the Claims in issue, already referenced in more detail in *Clayton I*, 195 B.R. at 344–45, and hence not reiterated here, began with the parties' agreement to pursue the licensing and distribution of a soft drink, the "Big Squeeze," a Lipton Corporation product. Eventually the relationship culminated in the Creditor's filing suit against the Debtor in the Delaware County,

Pennsylvania, Court of Common Pleas ("the C.C.P.") on November 9, 1990, alleging fraud, breach of contract, and intentional interference with the Creditor's contractual rights. On April 3, 1992, a C.C.P. jury entered a verdict in favor of the Creditor and against the Debtor in the amount of $640,000 and against CDS in the amount of $2 million. The substance of the Claims are set forth in paragraphs 44 and 47 of the Complaint, respectively, as follows:

> 44. Upon information and belief it is alleged that Defendant Clayton was a de facto fiduciary of the monies owed by CDS, amounting to $2,000,000 as determined by a jury on April 3, 1992, ...

> .    .    .    .    .

> 47. Upon information and belief it is alleged that Defendant Clayton in violation of section 523(a)(4) has embezzled or has wrongfully taken the monies owed by CDS, amounting to $2,000,000 as determined by a jury on April 3, 1992, to Plaintiff Sullivan.

## C. DISCUSSION

1. The Cross–Motions Indicate that the Parties Agree that *the Standards for Summary Judgment Are Met.*

Federal Rule of Civil Procedure ("F.R.Civ. P.") 56, which is incorporated in its entirety into the federal bankruptcy proceedings by the terms of Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 7056, provides, in pertinent part, that

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In *In re Rosco Investors,* 1996 WL 107503, at *5 (Bankr.E.D.Pa. March 6, 1996), quoting *In re Price,* 1994 WL 142373, at *3–*4 (Bankr. E.D.Pa. April 12, 1994), we recently articulated the appropriate standards for dealing with a motion for summary judgment thusly:

"In ruling on a motion for summary judgment, our function is not to weigh the evidence, ... but rather to determine whether there is any genuine issue as to any material fact. *See Schillachi v. Flying Dutchman Motorcycle Club,* 751 F.Supp. 1169 (E.D.Pa.1990). The evidence of the non-moving party is to be assumed correct, and all reasonable inferences therefrom are accrued to the benefit of the non-moving party. *Berner Int'l Corp. v. Mars Sales Co.,* 987 F.2d 975, 978 (3d Cir.1993); and *In re Asbestos School Litigation,* 768 F.Supp. 146, 149 (E.D.Pa.1991). Summary judgment is to be entered only if, in spite of the foregoing, the court deems that the movant is entitled to relief as a matter of law."

In *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986), the Court, quoting F.R.Civ.P. 1, stated that summary judgment is not a "disfavored procedural shortcut, but rather ... an integral part of the Federal Rules as a whole, which are designed 'to secure the just speedy and inexpensive determination of every action.'"

■ The fact that both parties have moved for summary judgment suggests that they agree that no material facts are in dispute and that a decision can be rendered as a matter of law on the instant paper record, albeit that each suggests a different legal result. The parties each proffer significant factual allegations. The 20 pages and 94 paragraphs of the Creditor's motion are crammed with factual averments. The Debtor's belated response[1] includes a 16–page, 32–paragraph affidavit of the Debtor. Both attach numerous exhibits. However, a large measure of the factual averments contained therein are not actually relevant to the issues before us, and we join the parties' implicit concession that the numerous factual disputes are not at all material to resolution of the Claims. It therefore would serve little purpose to recite or even summarize these averments. We will simply make reference to them in the few instances where they are pertinent to the issues before us.

2. *The Creditor Has Failed to Allege Facts Relevant to a Successful Claim Under the Fiduciary Duty Prong of 11 U.S.C. § 523(a)(4).*

[2] The Claims in issue are based on 11 U.S.C. § 523(a)(4), which provides as follows:

§ 523. Exceptions to discharge

(a) A discharge under section 727, ... of this title does not discharge an individual debtor from any debt; ...

. . . . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; ...

The standard of proof for § 523(a)(4) claims, as for all of the dischargeability exceptions set forth in 11 U.S.C. § 523(a), is by the "preponderance of the evidence." *Grogan v. Garner,* 498 U.S. 279, 282–89, 111 S.Ct. 654, 657–661, 112 L.Ed.2d 755 (1991).

■ In order for the Creditor to prevail on his claims under the fiduciary duty prong of § 523(a)(4), he was obliged to prove, by a preponderance of the evidence, that the Debtor was acting in a fiduciary capacity and that he committed fraud or defalcation which created a debt in favor of the Creditor while in that capacity. *See In re Marchiando,* 13 F.3d 1111, 1115 (7th Cir.1994) (POSNER, J.); and *In re Librandi,* 183 B.R. 379, 384 (M.D.Pa.1995). Addressing the second of these elements first, we find that the requisite nexus between the debt of the debtor to the Creditor and the alleged fraud or defalcation arising out of a purported fiduciary capacity proves impossible for the Creditor to allege, and the absence of this nexus is in itself fatal to all of the Creditor's § 523(a)(4) claims.

---

**1.** On the date that his submission was due, July 19, 1996, we called the Debtor's counsel to be assured that we would have his submission in hand to prepare for the July 25, 1996, status conference and, if possible, to be able to decide these motions prior to July 25, 1996, conference. Counsel only then informed us that his submission would be late. It was in fact filed on July 23, 1996. No sanctions are imposed for this failure to comply with our scheduling order other than noting counsel's unprofessional failure to adhere to established deadlines or advise the court of same until prompted.

■ The C.C.P. judgment resulted in separate debts of CDS and the Debtor to the Creditor. The Creditor has made numerous allegations, both in Adv. 355 and in his instant motion papers, alleging fraudulent conveyances of the assets of CDS by the Debtor. Thus, paragraph 44 and 47 of the Complaint, quoted at page 881 *supra*, allege, in substance, that the Debtor breached a fiduciary duty to (and embezzled from) CDS. However, what is lacking is any indication that the $2 million debt of CDS to the Creditor arose from an act of the Debtor which constituted defalcation or fraud in a fiduciary capacity, or, for that matter, constituted embezzlement or larceny, either. Rather, we observe that CDS' debt arose simply from the C.C.P. jury's determination that CDS had damaged the Creditor in that amount.

We previously analyzed the § 523(a)(4) fiduciary duty prong in the context of a corporate officer's duty to corporate creditors, the closest analogue to the Creditor's allegations on this prong, in *In re Kaplan*, 162 B.R. 684, 704–06 (Bankr.E.D.Pa.1993), *aff'd*, 189 B.R. 882, 894–95 & n. 16 (E.D.Pa.1995). *Cf. In re Spector*, 133 B.R. 733, 738–41 (Bankr.E.D.Pa. 1991) (addressing the duty of a managing partner of a partnership to the other partners, which we held is not a § 523(a)(4) fiduciary duty). In both of the above cases, we emphasized the necessity of a successful § 523(a)(4) fiduciary-duty plaintiff to establish the presence of a an express trust relationship between the creditor and the debtor. *Kaplan, supra*, 162 B.R. at 704–05; and *Spector, supra*, 133 B.R. at 739. In *Kaplan*, 162 B.R. at 705, we noted further that

[t]he prerequisites for the creation of an express trust relationship under Pennsylvania law are, as we thusly held in *In re Kulzer Roofing, Inc.*, 139 B.R. 132, 139–40 (Bankr.E.D.Pa.), *aff'd*, 150 B.R. 134 (E.D.Pa.1992), quite demanding:

"The elements of an express trust, as developed by Pennsylvania case law, are (1) an express intent to create a trust; (2) an ascertainable *res*; (3) a sufficiently certain beneficiary; and (4) a trustee who "owns" and administers the *res* for the benefit of another (the beneficiary). *See In re Penn Central Transportation Co.*, 486 F.2d 519, 524 (3d Cir.1973), *cert. denied sub nom. Baker v. Indiana H.B. R.R.*, 415 U.S. 990, 94 S.Ct. 1588, 39 L.Ed.2d 886 (1974) ("*Penn Central I*"); *Sherwin [v. Oil City Nat'l Bank,]* ... 229 F.2d [835,] at 838, 839 [ (3rd Cir.1956) ]; *In re I.D. Craig Service Corp.*, 125 B.R. 453, 456 (Bankr.W.D.Pa. 1991); *In re CS Associates*, 121 B.R. 942, 959 (Bankr.E.D.Pa.1990); *In re Shervin*, 112 B.R. 724, 734 (Bankr. E.D.Pa.1990); and *Presbytery of Beaver–Butler United Presbyterian Church v. Middlesex Presbyterian Church*, 507 Pa. 255, 268–69, 489 A.2d 1317, 1324, *cert. denied*, 474 U.S. 887, 106 S.Ct. 198, 88 L.Ed.2d 167 (1985). . . ."

■ Putting aside for a moment the issue of whether any express trust relationship existed between the Creditor and the Debtor in reference to the latter's role in CDS, we observe that, in the instant circumstances, there is no trust *res* of which the Creditor is the beneficiary under the Creditors' § 523(a)(4) fiduciary duty scenario. *See Librandi, supra*, 183 B.R. at 384. Put another way in *Marchiando, supra*, 13 F.3d at 1115, a § 523(a)(4) cause of action can arise only when "the bankrupt is a trustee *and the creditor a beneficiary of the trust*" (emphasis added). In the present scenario, as the Creditor states in his brief, the assets of CDS are the trust *res*. The only relationships of the Debtor and CDS to the Creditor are those of being its debtors.

■ Assuming *arguendo* that it were proven that the Creditor could somehow be characterized as the beneficiary of the Debtor's relationship with CDS, and that the Creditor's judgment of $2 million against the Debtor could be characterized as a trust *res*, we would nevertheless doubt the viability of the Creditor's § 523(a)(4) fiduciary-duty claims. These claims are based on the legal proposition that an officer of an insolvent corporation is a § 523(a)(4) fiduciary of creditors of that corporation. We expressly rejected that theory in *Kaplan*, 162 B.R. at 704–05. Although we acknowledge some authority to the contrary, particularly dictum in *In re Bagel*, 1992 WL 477052, at *16 (Bankr. E.D.Pa. Dec. 17, 1991), *aff'd without publish-

ed opinion, 22 F.3d 300 (3d Cir.1994),[2] we reaffirm the position that we asserted in *Kaplan. Accord, e.g., In re Martin,* 162 B.R. 710, 714 (Bankr.C.D.Ill.1993). *See also, e.g., Marchiando, supra,* 13 F.3d at 1115–16; *Librandi, supra,* 183 B.R. at 382–86; and *In re Twitchell,* 91 B.R. 961, 964–65 (D.Utah 1988). *Contra, e.g., In re Kaczynski,* 188 B.R. 770, 776–77 (Bankr.D.N.J.1995) (Judge Stripp refuses to follow reasoning of Judge Posner); and *In re Menendez,* 107 B.R. 789, 792 (Bankr.S.D.Fla.1989).

*Bagel* involved a debtor-corporate officer who had been found by a federal jury to have acted as the liquidating trustee of a corporation. 1992 WL 477052, at *11. The jury further found that the debtor had defrauded the federal government. *Id.* at *6. Finally, the jury also proceeded to pierce the corporate veil of the corporation. *Id.* The statement in *Bagel,* at *16, that a common law fiduciary duty arises upon insolvency was made in the context of an analysis of whether the debtor's status, during dissolution of an allegedly-solvent corporation, gave rise to § 523(a)(4) liability. *Id.* at *13–*16. *But see In re Cocivera,* 1992 WL 560937, at *1 (Bankr.E.D.Pa. Oct. 20, 1992) (this court, in a decision preceding *Bagel,* involving a co-conspirator of the *Bagel* debtor, suggests that it might reach a different result on the same facts).

Pertinent to the instant matter, we note that *Bagel, Kaczynski,* and their progeny involved situations where the respective plaintiff-alleged trust beneficiaries suffered financial losses as direct results of breaches of the fiduciary relationships in issue. Here, again, no such losses occurred. Thus, for two separate alternative reasons, *i.e.,* the absence of a fiduciary relationship and the Creditors' inability to establish a loss due to the breach of a fiduciary relationship, we conclude that the Creditor is not entitled to relief under the fiduciary prong aspect of § 523(a)(4), even if all of his factual averments were proven.[3]

3. *The Creditor Has Failed to Allege Facts Supporting a Decision in Its Favor Under the Embezzlement/Larceny Prong of 11 U.S.C. § 523(a)(4).*

■ As a secondary alternative, the Creditor also requests relief in his motion for summary judgment based on the embezzlement/larceny prong of § 523(a)(4). We have defined "larceny," for § 523(a)(4) purposes, as "the fraudulent and wrongful taking and carrying away of the property of another with the intent to covert such property to the taker's use without the consent of the owner." *In re Graham,* 194 B.R. 369, 374 (Bankr.E.D.Pa.1996). Larceny thus requires that the initial appropriation of the property of another be wrongful.

■ We have defined embezzlement as the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come. It differs from larceny in the fact that the original taking of the property was lawful or with [the] consent of the owner, while in larceny the felonious intent must have existed at the time of the taking.

*Spector, supra,* 133 B.R. at 741. Embezzlement occurs when funds are transferred to a party who is authorized to receive them but who misappropriates the funds once acquired. *Id.* To prove embezzlement, under

---

2. Since the Court of Appeals did not publish any opinion in deciding *Bagel,* we are not bound by this decision. *See In re Glenn,* 198 B.R. 106 (Bankr.E.D.Pa.1996); and Internal Operating Procedures of the United States Court of Appeal for the Third Circuit, §§ 5.8, 9.1. Furthermore, as referenced hereinafter, these statements in *Bagel* were dictum.

3. One other necessary element of the Creditor's case about which we have grave doubt that proof was provided was that of the requisite insolvency of CDS at the crucial time of the alleged fiduciary-duty breach giving rise to the loss in issue. In the absence of any fiduciary breach giving rise to liability, we can only speculate as to when the appropriate date to measure insolvency might be. A logical selection could be April 3, 1992, the date of the verdict giving rise to CDS' liability to the Creditor. The Creditor's only allegation regarding CDS' insolvency at that time is the slender statement (without cited authority) that CDS "remained technically insolvent" during calendar year 1992. We would not grant summary judgment to the Creditor on the basis of this allegation in this record even were we inclined to deny such relief to the Debtor.

§ 523(a)(4), the plaintiff must show "that (1) the debtor appropriated [the subject] funds for his or her own benefit; and (2) the debtor did so with fraudulent intent or deceit." *In re Weber*, 892 F.2d 534, 538 (7th Cir.1989).

■ Essential to both larceny and embezzlement is the element of fraudulent intent. *Graham, supra*, 194 B.R. at 374; and *Spector, supra*, 133 B.R. at 741. However, a fiduciary or trust relationship is not required in order to find a debt nondischargeable by an act of embezzlement or larceny. *Id.*

■ In the instant case, the Creditor has clearly not shown that the debtor committed larceny. The Debtor was the managing director of CDS and, as such, was authorized to handle its money. Nothing in the record presented would permit us to infer that the Debtor took money from CDS in a manner which could be characterized as wrongful. Thus, the Creditor clearly failed to demonstrate that the Debtor's conduct was larcenous.

■ Per the embezzlement charge, again the Creditor failed to demonstrate that the Debtor wrongfully withheld money to which he had been entitled. The creditor relies on the facts that the Debtor deposited certain large sums in certain accounts without explanation and that he did not report the money which he withdrew from CDS' checking account on his tax returns as evidence of the fact that the taking of the money was wrongful. However, these allegations are insufficient to support a charge of embezzlement. In his Affidavit, the Debtor avers that he withdrew the money and used it to market the "Big Squeeze" drink overseas and in support of other potential income-producing ventures. The Debtor's explanation is plausible and, in the absence of any contrary evidence, may be deemed truthful. Therefore, the Creditor's assertion of embezzlement is without merit.

The foregoing has been said without reference to the over-arching difficulty which the Creditor encounters with all of his § 523(a)(4) claims: the absence of a nexus between the Debtor's allegedly wrongful acts and the Creditor's losses. *See* pages 882–83 *supra*. In paragraph 47 of the Complaint, relating to the embezzlement and larceny charges, quoted at page 881 *supra*, the Creditor alleges that the Debtor embezzled monies owed by CDS, presumably from CDS. These allegations may state a cause of action to support an action to avoid fraudulent conveyances, as *is* alleged in Adv. 355, but it is inappropriate to conclude that such allegations could state a separate § 523(a)(4) claim against the Debtor.

■ There is no allegation that the Debtor embezzled or stole funds from the Creditor. Proof of embezzlement or larceny of the *Creditor's* funds, as opposed to those of CDS, is necessary to establish a cause of action under the embezzlement/larceny prong of § 523(a)(4). This claim, like the Creditor's claim based on the fiduciary-duty prong of § 523(a)(4), can thus be dismissed as a matter of law.

## D. CONCLUSION

The Debtor's motion for summary judgment in his favor must therefore be granted. As a result, the Creditor's similar motion must be denied.