POSNER, Chief Judge.
 

 Nancy Marchiando owned a convenience store in Sycamore, Illinois. In 1983 the state licensed her under the Illinois Lottery Law, 20 ILCS 1605
 
 et seq.,
 
 to sell lottery tickets. The law provides that the proceeds of sales of lottery tickets “shall constitute a trust fund until paid to the Department,” § 1605/10.3, forbids the commingling of these proceeds with other funds, and makes the violation of its provisions a felony. In 1991 Marchiando declared bankruptcy, owing the state almost $17,000 for proceeds of ticket sales that she had failed to remit to it. She admitted both the debt and her failure to segregate the receipts as required by the law; as her business declined she had used the proceeds of her ticket sales to keep it afloat a little longer. No criminal or other penalty actions have as yet been instituted against her, however. The state filed an adversary complaint in the bankruptcy proceeding, seeking a declaration that the debt was not dischargeable in bankruptcy — not because the lottery law says that such a debt is not dischargeable, though it does, § 1605/10.5(e), but because the Bankruptcy Code exempts from discharge any debt arising from a “defalcation while acting in a fiduciary capacity.” 11 U.S.C. § 523(a)(4). The bankruptcy judge disagreed that Mar-chiando had been acting in a fiduciary capacity within the meaning of this provision, and declared the debt dischargeable. 138 B.R. 548 (Bankr.N.D.Ill.1992). The district court affirmed, 142 B.R. 246 (N.D.Ill.1992), and the state appeals.
 

 At some point Marchiando received a discharge of all her other debts, but we do not know whether that was before the bankruptcy judge issued his order refusing to discharge the debt to the state’s lottery department or afterward. If it was before, that order was conventionally final, for there was nothing left for the bankruptcy court to do. Even if there was something left for it to do, a request for a declaration of nondischarge-ability is conceived as kicking off a separate,
 
 *1114
 
 adversary proceeding within the framework of the overall bankruptcy proceeding, Bankruptcy Rule 7001(6), so that an order declaring the debt either dischargeable or not is a final, appealable order.
 
 In re Riggsby,
 
 745 F.2d 1153, 1154 (7th Cir.1984).
 

 There is nevertheless a question of our jurisdiction. The notice of appeal was filed more than 30 days after the entry of the final order from which the state seeks to appeal, the time normally allowed for a civil appeal other than by the federal government. Under a recent amendment to the federal appellate rules, however, a district judge can create a 14-day window for the filing of a late appeal if he finds that the party seeking to appeal did not receive notice of the judgment within 21 days of its entry, no party would be prejudiced by a late appeal, and the party asking leave to take the late appeal asked for it within 7 days after he received notice of the judgment or within 180 days after the entry of judgment, whichever came sooner. Fed.R.App.P. 4(a)(6) (added in 1991). The state filed a motion, supported by affidavit, reciting compliance with the conditions of the rule — no notice within 21 days, no prejudice, request timely. The debtor did not oppose the motion, and the district judge granted it without an opinion or statement of reasons.
 

 The new rule does not grant a district judge carte blanche to allow untimely appeals to be filed. He must make findings that the conditions prescribed by the rule have been satisfied. This requirement is important to prevent the rule from being treated by judges and litigants as purely discretionary, transforming the 30-day period for taking an appeal into a 180-day period. The judge in this case made no findings. But the omission, while unfortunate, is not fatal. The affidavit accompanying the motion for leave to file a late appeal was uncontradicted. It establishes as a matter of fact that the preconditions to the judge’s exercise of discretion were satisfied. To remand for explicit findings would be pointless, because the outcome would be foreordained: given the un-contradicted affidavit, the judge would have no choice but to find that the conditions for the exercise of his discretion had been satisfied.
 

 When the record permits only one finding, the court of appeals can make the finding itself, without remand to the district court.
 
 Pelfresne v. Village of Williams Bay,
 
 917 F.2d 1017, 1022 (7th Cir.1990);
 
 Avery v. Homewood City Bd. of Education,
 
 674 F.2d 337, 341 n. 5 (5th Cir.1982); 9 Charles Alan Wright & Arthur R. Miller,
 
 Federal Practice and Procedure
 
 § 2577, pp. 699-702 (1971); cf.
 
 Levin v. Mississippi River Fuel Corp.,
 
 386 U.S. 162, 169-70, 87 S.Ct. 927, 931-32, 17 L.Ed.2d 834 (1967). We are mindful that the Supreme Court held in
 
 Icicle Seafoods, Inc. v. Worthington,
 
 475 U.S. 709, 713-14, 106 S.Ct. 1527, 1529-30, 89 L.Ed.2d 739 (1986), that an appellate court cannot make its own findings of fact; if the findings of fact made by the district court are clearly erroneous, the proper course is to remand. All that this means, however, is that if the district court has failed to do its job of finding the facts properly, the court of appeals cannot, in the interest of judicial economy, take over the district court’s role and make its own findings of fact to avoid the delay that remanding the case would cause. That is different from a case such as this in which the record allows no dispute over the facts. For then by making the finding itself the court of appeals is not taking away any of the authority of the district court. It is only a finding on a
 
 disputed
 
 fact that
 
 Icicle
 
 reserves to the district court,
 
 Kungys v. United States,
 
 485 U.S. 759, 775 n. 10, 108 S.Ct. 1537, 1548 n. 10, 99 L.Ed.2d 839 (1988) (plurality opinion);
 
 Pelfresne v. Village of Williams Bay, supra,
 
 917 F.2d at 1022, and there are no disputed facts here.
 

 Parties cannot confer jurisdiction by consent, so Marchiando’s failure to contest the state’s affidavit would not have prevented the district judge from holding a hearing to determine the truth of the facts attested to in it. But the judge was not required, in the absence of any suspicious circumstances, to hold a hearing. The danger of collusive conferral of
 
 appellate
 
 jurisdiction is slight; for why should the party that won below give his opponent a shot at reversal? The state’s affidavit was of course sworn, and contains no implausibilities such as would or should alert a judge to the likelihood that the affida
 
 *1115
 
 vit was perjured or otherwise false or inaccurate.
 

 The findings required by the statute are a prerequisite to the exercise of the district court’s discretion to permit a late appeal, not a substitute for that exercise. But we know that the district court wanted to exercise its discretion in favor of the appellant. The only question is whether he had the power, which depended on the satisfaction of the statutory prerequisites. But it is uncontested that they
 
 were
 
 satisfied. We may turn then to the merits.
 

 Bankruptcy is both a creditor’s remedy and a debtor’s right. The discharge of the bankrupt’s debts is an essential feature of the second function; it is what enables the bankrupt to get a “fresh start.” It is also, depending on the bankrupt’s future income prospects, a potentially great harm to creditors. When the bankrupt is a trustee and the creditor a beneficiary of the trust, the balance has been deemed to incline against discharge. Nondischarge becomes another token of the law’s imposition of the highest standard of loyalty and care on trustees. In a trust relationship the settlor and beneficiary repose “trust” in a literal sense in the trustee, and the abuse of that trust is considered a serious wrong.
 

 The high standard of loyalty and care that the law imposes on trustees is encapsulated in the term “fiduciary duty.” Once it entered the law’s bank of concepts, it became available for use in situations that, while not involving trusts in a formal sense, seemed to call for the imposition of the same high standard.
 
 Restatement (Second) of Trusts
 
 § 2, comment b (1959). So a lawyer is deemed the fiduciary of his client, even if he does not manage a fund entrusted to him by the client,
 
 Maksym v. Loesch,
 
 937 F.2d 1237, 1241-42 (7th Cir.1991), and a managing partner is a fiduciary of the limited partners, corresponding to shareholders of a corporation, although again there is no trust in the conventional sense.
 
 In re Bennett,
 
 989 F.2d 779, 790 (5th Cir.1993); see also
 
 In re Short,
 
 818 F.2d 693 (9th Cir.1987);
 
 In re Davis,
 
 3 F.3d 113, 116 (5th Cir.1993).
 
 Bennett, Short
 
 and
 
 Davis
 
 held that the defalcation by the fiduciaries involved in those cases was, by virtue of section 523(a)(4), nondischargeable in bankruptcy. Yet a further extension of the fiduciary concept — the use of the concept of “constructive trust” (where “constructive” bears its usual legal meaning of “no”) to impose the fiduciary duty of a trustee on a person who is not a trustee — has been held not to come within the reach of section 523(a)(4).
 
 Davis v. Aetna Acceptance Co.,
 
 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934);
 
 In re Bennett, supra,
 
 989 F.2d at 784;
 
 In re Teichman,
 
 774 F.2d 1395 (9th Cir.1985); 3
 
 Collier on Bankruptcy
 
 ¶ 523.14, pp. 523-106 to 523-110 (Lawrence P. King ed., 15th ed. 1993). Resulting and implied trusts are out too.
 
 Ragsdale v. Haller,
 
 780 F.2d 794, 796 (9th Cir.1986). And a debtor who has given his creditor a “trust receipt” to secure the loan is not a fiduciary for purposes of the statute.
 
 Davis v. Aetna Acceptance Co., supra,
 
 293 U.S. at 334, 55 S.Ct. at 154; cf.
 
 In re Long,
 
 774 F.2d 875, 878-79 (8th Cir.1985). To complicate the picture further, the cases are divided over the question whether a statute that, as in our case, deems a debtor a fiduciary in order to enlarge the remedies for default makes the debtor a “fiduciary” for purposes of section 523(a)(4). For a sample of these cases, compare
 
 Quaif v. Johnson,
 
 4 F.3d 950 (11th Cir.1993) (per curiam), and
 
 Carey Lumber Co. v. Bell,
 
 615 F.2d 370 (5th Cir.1980) (per curiam), with
 
 In re Nicholas,
 
 956 F.2d 110 (5th Cir.1992), and
 
 In re Angelle,
 
 610 F.2d 1335 (5th Cir.1980). Our own
 
 In re Thomas,
 
 729 F.2d 502, 504-05 (7th Cir.1984), contains the briefest of dicta supporting the affirmative position; it is our only brush with the issue.
 

 The key to knitting the eases into a harmonious whole is the distinction stressed in
 
 Davis
 
 and other cases between a trust or other fiduciary relation that has an existence independent of the debtor’s wrong and a trust or other fiduciary relation that has no existence before the wrong is committed. A lawyer’s fiduciary duty to his client, or a director’s duty to his corporation’s shareholders, pre-exists any breach of that duty, while in the case of a constructive or resulting trust there is no fiduciary duty until a wrong
 
 *1116
 
 is committed. The intermediate case, but closer we think to the constructive or resulting trust pole, is that of a trust that has a purely nominal existence until the wrong is committed. Technically, Marchiando became a trastee as soon as she received her license to sell lottery tickets. Realistically, the trust did not begin until she failed to remit ticket receipts. For until then she had no duties of a fiduciary character toward the Department of Lottery or anything or anyone else. Until then, she was just a ticket agent. The state, afraid that she might be a disloyal agent, required her to keep the proceeds of her ticket sales separate from her other funds and threatened her with criminal punishment if she did not. These were devices by which the state sought to establish and enforce a lien in the proceeds, the better to collect them securely. The analogy is to “floor planning,” where a bank insists that the proceeds of any sale from inventory be remitted to the bank to pay down the principal of the loan as soon as the sale is made. Such arrangements, held not to come within the scope of section 523(a)(4) in
 
 Davis
 
 and
 
 Long,
 
 are remote from the conventional trust or fiduciary setting, in which
 
 someone
 
 — a lawyer for example, or a guardian, or a managing partner — in whom confidence is reposed is entrusted with another person’s money for safekeeping. See also
 
 In re Iowa R.R.,
 
 840 F.2d 535, 541-45 (7th Cir.1988).
 

 If we probe more deeply the distinction between the fiduciary relation that imposes real duties in advance of the breach and the fiduciary relation that does not we find that the first group of cases involve a difference in knowledge or power between fiduciary and principal which, as we put it in
 
 Maksym v. Loesch, supra,
 
 937 F.2d at 1242, gives the former a position of ascendancy over the latter. See also
 
 Kham & Nate’s Shoes No. 2, Inc. v. First Bank,
 
 908 F.2d 1351, 1357 (7th Cir.1990);
 
 Weinberger v. Kendrick,
 
 698 F.2d 61, 78-79 (2d Cir.1982) (Friendly, J.); Gratz
 
 v. Claughton,
 
 187 F.2d 46, 49 (2d Cir.1951) (L. Hand, J.). The fiduciary may know much more by reason of professional status, or the relation may be one that requires the principal to repose a special confidence in the fiduciary; both factors are present in the case of a lawyer-client relation and also the relation between director and shareholder or managing partner and limited partner. Or the principal may be a child, lacking not only knowledge but also the power to act upon it. These are all situations in which one party to the relation is incapable of monitoring the other’s performance of his undertaking, and therefore the law does not treat the relation as a relation at arm’s length between equals.
 

 All the cases except
 
 Quaif
 
 and
 
 Carey
 
 that have held debts nondischargeable by virtue of section 523(a)(4) have involved either express trusts of a conventional variety or fiduciary relations of the kind just described — relations of inequality that justify the imposition on the fiduciary of a special duty, basically to treat his principal’s affairs with all the solicitude that he would accord to his own affairs. Nothing of the sort is involved here. The fiduciary is a ticket agent with no edge based on the possession of power or expertise; the principal is the state itself. The inequality of relation that calls for the imposition of fiduciary duties is wholly absent.
 

 If, contrary to our decision in
 
 Judd v. First Federal Savings & Loan Ass’n,
 
 710 F.2d 1237, 1241 (7th Cir.1983), which holds that the word “trust” in an instrument does not by itself “transform a traditional debtor-creditor relationship into a fiduciary relationship,” a fiduciary is anyone whom a state calls a fiduciary — the only principle on which the discharge of Marchiando’s debt could be refused — states will have it in their power to deny a fresh start to their debtors by declaring all contractual relations fiduciary. They are not apt to go that far. They are apt to seek a preferred position
 
 for
 
 their own debts by declaring people who do business with the state fiduciaries of the state or its agencies. Illinois has tried to do this with its ticket agents. If it succeeds, next it can do it with all its other contractors. Libertarians may smile approvingly at the state’s equating its bureaucracies to the children and other incompetents who are the classic trust beneficiaries, but we do not think Congress would. The convenience-store keeper who commingles the proceeds of her lottery ticket sales with her other receipts is at a considerable remove from the lawyer who converts money
 
 *1117
 
 in his clients’ escrow accounts or the bank trust department that invests someone’s retirement fund recklessly.
 

 Marchiando, moreover, is playing a risky game, which makes it unlikely that our decision will endanger legitimate state interests. By successfully challenging the state’s effort to prevent her from discharging her debt to it, she invites it to bring a criminal proceeding against her, since any fine levied in such a proceeding would be nondisehargeable. 11 U.S.C. § 523(a)(7). We do not know whether the statute of limitations has run, and if not whether the state could prove the state of mind (if any) required for criminal liability under the lottery law beyond a reasonable doubt. Even if specific intent to violate the statute is required, there should be no difficulty in proving it, for it seems plain that Marchiando
 
 deliberately
 
 commingled ticket receipts with other receipts, in order to postpone the collapse of her business. The possibility of criminal prosecution of disloyal ticket agents is the lawful alternative, denied most creditors, to the State of Illinois’ foredoomed effort to squeeze its lottery law into the nondischarge provision.
 

 AFFIRMED.