**In re Khai Lee TRAN, Theresa Thanh Tran, Debtors.**

**TEXAS LOTTERY COMMISSION, Plaintiff,**

v.

**Theresa Thanh TRAN, Defendant.**

**Bankruptcy No. 95–41427–H5–7.
Adv. No. 95–4404.**

United States Bankruptcy Court, S.D. Texas, Houston Division.

Dec. 14, 1995.

Flora A. Fearon, Austin, TX, for Plaintiff.

Ray L. Shackelford, Houston, TX, for Defendant.

### *MEMORANDUM OPINION*

KAREN KENNEDY BROWN,
Bankruptcy Judge.

Before the Court is the Texas Lottery Commission's Complaint to Determine Dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(4). The Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a) and (b), and the standing order of reference in district for bankruptcy cases and proceedings. This is a core proceeding.

### I.  Findings of Fact

On February 28, 1995, Ms. Tran, along with her husband, Khai Lee Tran, filed a joint petition for relief under chapter 7 of the United States Bankruptcy Code.

Prior to bankruptcy, debtors operated businesses known as Clayton Supermarket located at 1728 W. Mt. Houston, Houston, Texas, and E.Q.'s Grocery located at 1411 Ahrens, Houston, Texas. Ms. Tran obtained a license to operate E.Q.'s Grocery as a lottery agent in 1992. Ms. Tran's duties as lottery agent included selling lottery tickets and remitting ticket sales proceeds to the Texas Lottery Commission.

The debtors maintained an operating account for E.Q.'s Grocery at Bank One. Ms. Tran was not required by the Texas Lottery Commission to establish a separate account for the proceeds of lottery ticket sales. The account at Bank One allowed the Texas Lottery Commission to make automatic withdrawals for payment of lottery sales proceeds through an electronic transfer system. Other creditors also were able to make electronic withdrawals from the account. Debtor deposited all of the sales proceeds of E.Q.'s Grocery from whatever source, including lottery sales proceeds, into the Bank One account. Likewise, the funds on deposit in this account were used to pay all operating expenses of E.Q.'s Grocery, including electronic transfer demands of the Texas Lottery Commission for lottery ticket sales.

Between February 1, 1995 and February 18, 1995, debtor became obligated to the Texas Lottery Commission for over $70,000 in unpaid lottery ticket receipts. During this time the Bank One account contained insufficient funds to pay the electronic withdrawal demands of the Texas Lottery Commission. The Commission inactivated debtor's lottery terminal on February 21, 1995. Agents of the Texas Lottery Commission seized E.Q.'s Grocery on March 2, 1995 and took all cash on hand, $57.00.

Ms. Tran testified that she played several lottery games but failed to pay for them. She also testified that her store was robbed at some point.

## Conclusions of Law

■ The State Lottery Act, Texas Government Code, § 466.351 requires that all revenue received from the sale of lottery tickets be deposited in the State Treasury. Although section 466.351(b) empowers the Commission to require sales agents to establish a separate electronic funds transfer account for the deposit and payment of lottery proceeds, Ms. Tran was not required to do so.

Tex.Govt.Code Ann. § 466.353 (West 1995) provides:

### Liability of Sales Agent

(a) A sales agent is liable to the division for all tickets accepted or generated by the sales agent or any employee or agent of the sales agent, and tickets shall be deemed to have been purchased by the sales agent unless returned to the division within the time and manner prescribed by the division.

(b) Money received by a sales agent from the sales of tickets, less the amount retained for prizes paid by the sales agent or for the agent's commission, if any, together with any unsold tickets, shall be held in trust for the benefit of the state before delivery to a lottery operator or the division or electronic transfer to the state treasury, and the sales agent is liable to the division for the full amount of the money or unsold tickets so held. If the sales agent is not an individual, each officer, director, or owner of the sales agent is personally liable to the division for the full amount of the money or unsold tickets held in trust for the benefit of the state.

Bankruptcy Code § 523(a)(4) provides that an individual debtor shall not be discharged from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny ..."

The Texas Lottery Commission contends that Ms. Tran's failure to account for and deliver the lottery sales proceeds to the Commission as required by the Texas Government Code created a debt in the amount of $80,982.01 which is excepted from discharge under 11 U.S.C. § 523(a)(4).

■ "... [T]he concept of fiduciary under 11 U.S.C. § 523(a)(4) is narrowly defined, applying only to technical or express trusts, and not those which the law implies from the contract." *In re Bennett,* 989 F.2d 779, 784 (5th Cir.1993), *cert. denied, Bennett v. LSP Inv. Partnership,* — U.S. ——, 114 S.Ct. 601, 126 L.Ed.2d 566 (1993). The trust relationship must exist prior to the act creating the debt and without reference to that act. *Id.* The court must decide whether the obligations imposed under state law are sufficient to meet the federal law requirements of "fiduciary capacity" under section 523(a)(4). 989 F.2d at 785. The Fifth Circuit in *Bennett,* reviewed the line of cases establishing the fiduciary duty of a managing partner to his copartners and found "... it is clear that the issue of control has always been the critical fact looked to by the courts in imposing this high level of responsibility." 989 F.2d at 789.

The Seventh Circuit in analyzing a statute similar to the Texas State Lottery Act, found in *In re Marchiando,* 13 F.3d 1111 (7th Cir.1994), *cert. denied, Illinois Dept. of the Lottery v. Marchiando,* — U.S. ——, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994):

Technically, Marchiando became a trustee as soon as she received her license to sell lottery tickets. Realistically, the trust did not begin until she failed to remit ticket receipts. For until then she had no duties of a fiduciary character toward the Department of Lottery or anything or anyone else. Until then, she was just a ticket agent. The state, afraid that she might be a disloyal agent, required her to keep the proceeds of her ticket sales separate from her other funds and threatened her with criminal punishment if she did not. These were devices by which the state sought to establish and enforce a lien in the proceeds, the better to collect them securely.

... Such arrangements, ... are remote from the conventional trust or fiduciary setting, in which someone—a lawyer for example, or a guardian, or a managing partner—in whom confidence is reposed is entrusted with another person's money for safekeeping.

If we probe more deeply the distinction between the fiduciary relation that imposes real duties in advance of the breach and the fiduciary relation that does not we find that the first group of cases involve a difference in knowledge or power between fiduciary and principal which, ... gives the former a position of ascendancy over the latter. The fiduciary may know much more by reason of professional status, or the relation may be one that requires the principal to repose a special confidence in the fiduciary; both factors are present in the case of a lawyer-client relation and also the relation between director and shareholder or managing partner and limited partner. Or the principal may be a child, lacking not only knowledge but also the power to act upon it. These are all situations in which one party to the relation is incapable of monitoring the other's performance of his undertaking, and therefore the law does not treat the relation as a relation at arm's length between equals.

All the cases except *Quaif* [*v. Johnson*, 4 F.3d 950 (11th Cir.1993)] and *Carey* [*Lumber Co. v. Bell*, 615 F.2d 370 (5th Cir.1980)] that have held debts nondischargeable by virtue of section ·523(a)(4) have involved either express trusts of a conventional variety or fiduciary relations of the kind just described—relations of inequality that justify the imposition on the fiduciary of a special duty, basically to treat his principal's affairs with all the solicitude that he would accord to his own affairs. Nothing of the sort is involved here. The fiduciary is a ticket agent with *no edge based on the possession of power or expertise; the principal is the state itself.* The inequality of relation that calls for imposition of fiduciary duties is wholly absent.

... The convenience-store keeper who commingles the proceeds of her lottery ticket sales with her other receipts is at a considerable remove from the lawyer who converts money in his clients' escrow accounts or the bank trust department that invests someone's retirement fund recklessly.

13 F.3d at 1116 (citations omitted).

■ This Court concludes in accordance with *Marchiando* that a lottery ticket agent is not in a sufficient position of control vis a vis the state or the trust res to impose the "high level of responsibility" required in a fiduciary relationship. *cf. contra In re Kaczynski*, 188 B.R. 770 (Bankr.D.N.J.1995) (failure to turnover lottery ticket sales proceeds and to account for other tickets constituted defalcation of fiduciary duty in accordance with 11 U.S.C. § 523(a)(4)).

The Court concludes that no trust fund has been established due to the commingled nature of the funds deposited in debtors' bank account. Further, the relationship between a lottery ticket agent and the state is not in the nature of a fiduciary relationship sufficient to invoke 11 U.S.C. § 523(a)(4). Judgment will be entered separately.

## JUDGMENT

In accordance with the Memorandum Opinion entered herewith, it is

**ORDERED** that the debt of Theresa Thanh Tran to the Texas Lottery Commission is **DISCHARGED.**