**In re Dennis Jay GROTRIAN, Debtor.**

**Kenneth L. KOENIG, Plaintiff,**

v.

**Dennis Jay GROTRIAN, Defendant.**

**Bankruptcy No. 96–10086.
Adversary No. 96–1047.**

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

Nov. 25, 1997.

Dennis Becker, Fort Wayne, IN, for Plaintiff.

David Peebles, Fort Wayne, IN, for Defendant.

### *DECISION*

ROBERT E. GRANT, Bankruptcy Judge.

Defendant was Plaintiff's attorney, having drawn up wills for him and his wife in the 1970's. In late 1991, Plaintiff again consulted Defendant, this time for legal advice concerning the disposition of proceeds from the sale of his family's farm. Defendant suggested a family trust, in order to minimize taxes and help Plaintiff's brothers become eligible for Medicaid. The trust was not established immediately, however, because, as Defendant explained to his client, he needed to attend a seminar to learn how to do so properly. In the meantime, Defendant had his own financial needs and he persuaded Plaintiff to let him use the money in his own real estate ventures, promising to pay the same rate of interest that Plaintiff would receive by keeping the money in the bank.

On January 30, 1992, Plaintiff delivered the first of many checks to the Defendant. He also signed a letter Defendant had prepared, giving him permission to deposit the money into Defendant's GrotResorts, Int'l bank account and authorizing Defendant to "invest, reinvest and use said funds in your discretion." (Ex. 4). Between February and September of 1992, the two continued to meet on a monthly basis. At these meetings Plaintiff delivered additional checks to Defendant, in accordance with a schedule Defendant's office had suggested for the disposition of the money. In this manner, Defendant received $292,000 from Plaintiff. (Exs. 3 & 9).

In late 1992, Plaintiff asked Defendant to return his money and for an accounting of its use. When neither was forthcoming, he obtained new counsel to assist him. This resulted in a forbearance agreement and in Defendant giving Plaintiff a promissory note for $292,000, along with a mortgage and security agreement. When Defendant failed to pay the note as required, Plaintiff filed suit in the Allen Circuit Court and obtained a money judgment, in the sum of $227,305.68, and a decree of foreclosure.[1]

Defendant has filed a petition for relief under Chapter 7. By this adversary proceeding, Plaintiff seeks a declaration that the debt represented by the judgment of the Allen Circuit Court is nondischargeable, pursuant to 11 U.S.C. § 523(a)(2) and § 523(a)(4). The matter is before the court for a decision following trial of those issues.

■ Section 523(a)(4) of the Bankruptcy Code excepts from discharge any debt resulting from "fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). In order to prevail under § 523(a)(4), the plaintiff must demonstrate two things. First, there must be a fiduciary relationship between the plaintiff and the debtor/defendant. Second, the debtor's obligation to the plaintiff must arise out of its fraud or defalcation while acting in that capacity.

■ Whether or not a fiduciary relationship exists is a question of federal rather than state law. In re Marchiando, 142 B.R. 246, 249 (N.D.Ill.1992), aff'd, 13 F.3d 1111 (7th Cir.1994); In re Wheeler, 101 B.R. 39, 45 (Bankr.N.D.Ind.1989). As used in § 523(a)(4), the term "fiduciary capacity" has a limited application. It applies only to technical or express trusts or to those imposed by statute, as opposed to those which arise out of equitable considerations or which are implied by law. In re Stone, 91 B.R. 589, 593 (D.Utah 1988); Marchiando, 142 B.R. at 249; In re Myers, 52 B.R. 901, 904 (Bankr. E.D.Va.1985); In re Owens, 54 B.R. 162, 164 (Bankr.D.S.C.1984). As explained by the Seventh Circuit, this recognizes the distinction "between a trust or other fiduciary relation that has an existence independent of the debtor's wrong and a trust or other fiduciary relation that has no existence before the wrong is committed." Marchiando, 13 F.3d 1111, 1115 (7th Cir.1994). The fiduciary relationships addressed by § 523(a)(4) "involve a difference in knowledge or power between fiduciary and principal which ... gives the former a position of ascendancy over the latter." Id. at 1116.

■ The attorney-client relationship is a fiduciary relationship. Marchiando, 13 F.3d at 1116. Nonetheless, not all debts arising out of that relationship will be nondischargeable. Debts attributable to the professional negligence of an attorney, for example, do not fall under § 523(a)(4). See e.g., In re Hamilton, 147 B.R. 779 (Bankr.D.Colo.1992); In re Stokes, 142 B.R. 908 (Bankr.N.D.Cal. 1992). Nondischargeability is usually reserved for those situations where money or property has been entrusted to the attorney-debtor. In re Young, 91 F.3d at 1371 (10th Cir.1996); In re Kudla, 105 B.R. 985, 990 (Bankr.D.Colo.1989). Consequently, a debt arising out of an attorney's mishandling of its client funds, will be nondischargeable under § 523(a)(4). See e.g., In re Sonnier, 157 B.R. 976 (E.D.La.1993); Kwiat v. Doucette, 81 B.R. 184 (D.Mass.1987); In re McDowell, 162 B.R. 136 (Bankr.N.D.Ohio 1993); In re Ducey, 160 B.R. 465 (Bankr.D.N.H.1993); Kudla, 105 B.R. 985.

---

1. As a result of funds generated from the foreclosure and from the sale of Defendant's interest in a partnership, the balance due on account of the judgment is approximately $111,000.

Defendant contends that he was not acting as Plaintiff's attorney with regard to the money in question. Instead, he claims his associate was the one who provided legal services;[2] the transactions between Plaintiff and Defendant were simply a loan between friends. He argues that the present situation is identical to *In re Gans*, 75 B.R. 474 (Bankr.S.D.N.Y.1987). In that case, the debtor was an attorney who had represented his client in probate proceedings. Following the conclusion of those proceedings, the client approached counsel for advice regarding investment opportunities. The attorney proposed a personal loan, in return for which he would pay interest at a rate sufficient to meet his client's income needs. The client made a series of loans, the attorney defaulted and bankruptcy followed. In the resulting dischargeability litigation, the court was unable to conclude that the relationship was anything more than that of debtor and creditor. Although it recognized that the transaction may well have been a violation of counsel's professional ethics, the court noted that an intent to create a trust was not clearly expressed and no trust-like duties, such as the obligation to segregate the funds, were imposed upon the attorney. As a result, the court concluded the client had failed to carry its burden of proving that the debt was a nondischargeable one.[3] *Gans*, 75 B.R. at 492.

■ Despite the similarities between this case and *Gans*, the court finds that a fiduciary relationship existed between Plaintiff and Defendant. Plaintiff consulted Defendant for the specific purpose of obtaining legal advice concerning what to do with the farm sale proceeds. Defendant recommended that they be placed in trust and his office prepared a schedule for their disposition.[4] For whatever reason, the trust was not established. Instead, Defendant used his position as Plaintiff's attorney to persuade Plaintiff to let him use the sale proceeds in his own ventures, at an insignificant rate of return.[5] He also had Plaintiff deliver the money to him on a schedule that mimicked the schedule his office had prepared for the dissipation of Plaintiff's funds. Plaintiff sought out and obtained Defendant's legal advice with regard to the money in question. Defendant then apparently helped implement that advice by having Plaintiff deliver the money to him on schedule. There is no question that Plaintiff believed that Defendant was acting as his attorney in connection with these transactions and Defendant did nothing to dispel that belief.[6] This is clearly a situation involving "[t]he inequality of relation that calls for the imposition of fiduciary duties...." *Marchiando*, 13 F.3d at 1116.

■ "A person seeking legal assistance ... is entitled to be shielded from the self-serving conduct of his attorney." *Matter of Leibowitz*, 437 N.E.2d 973 (Ind.1982) (attorney disciplined for entering into a loan transaction with client, in violation of former D.R. 5–104(A)). For this reason, Rule 1.8 of the Indiana Rules of Professional Conduct prohibits a lawyer from entering into business transactions with a client unless certain steps are taken to protect the client's interests. The transaction and its terms must be fair and reasonable and must be fully disclosed to the client in writing, the client must

---

**2.** Even if it was Defendant's associate who actually performed the work, this associate worked under Defendant's supervision and it was Defendant who made the decision to have the work performed by his associated rather than to do it himself. Furthermore, this was only possible because Plaintiff had come to Defendant for his legal advice.

**3.** *Gans* was decided in 1987 and the court required the plaintiff to prove its case by clear and convincing evidence. *Gans*, 75 B.R. at 492. The Supreme Court has since decided that the appropriate evidentiary standard in dischargeability litigation is by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 284, 111 S.Ct.

654, 661, 112 L.Ed.2d 755 (1991). Consequently, this Plaintiff's evidentiary burden is not as great as the one placed upon the plaintiff in *Gans*.

**4.** In connection with Defendant's advice, either Defendant or his associate also prepared a durable power of attorney for Plaintiff's use and provided Plaintiff with a sample of a trust similar to the one Defendant recommended.

**5.** Defendant agreed to pay interest at the rate paid by LNB on checking accounts.

**6.** In June of 1992, Defendant's associate also performed other legal services for Plaintiff.

be given the opportunity to seek the advice of independent counsel, and the client must consent to the transaction in writing. Ind. R.P.C. 1.8(a). This was not done.

While Plaintiff may have signed a letter giving Defendant permission to deposit the funds into his GrotResorts, Int'l account, he did so believing that this was consistent with the trust Defendant was to set up on his behalf. Plaintiff did not understand and Defendant made no attempt to explain that this was not the case. Defendant never explained the conflicts or the risks involved or suggested that Plaintiff consider consulting independent counsel regarding the transaction. Furthermore, the transaction, involving as it did an unsecured loan of almost $300,000 at a minuscule rate of interest, was neither fair nor reasonable to Plaintiff.

 A lawyer is a fiduciary of his client and is presumptively barred from self-dealing at the expense of his client. *Maksym v. Loesch*, 937 F.2d 1237, 1241 (7th Cir.1991). Plaintiff sought out Defendant's legal advice concerning what to do with a substantial sum of money and Defendant advised him to place the funds into a trust. Instead of helping his client to implement that advice, in a blatant example of self-dealing, Defendant manipulated his position and abused the trust reposed in him. Had Defendant, in accordance with the advice he gave his client, established a trust for the sale proceeds and then used those funds for his own purposes, there would be no question concerning the nondischargeability of the resulting debt. Despite the fact that, in his rush to obtain the funds, this Defendant may have omitted the intermediate step of creating the trust before diverting the money, the court has no trouble concluding that his conduct also constitutes defalcation.

 Defendant argues that even if his conduct might constitute defalcation in a fiduciary capacity, the promissory note and forbearance agreement executed in 1993 extinguished the original debt and replaced it with a purely contractual obligation. Thus, even if the original debt would have been nondischargeable, it was transformed into a dischargeable contractual obligation when Plaintiff took the note. The argument is not supported by the evidence.

The legal principles associated with Defendant's argument are two fold:

[F]irst, a promissory note generally does not discharge the debt for which it is given; but second, if it is shown that the note was given and received as payment or waiver of the original debt and the parties agreed that the note was to substitute a new obligation for the old, the note fully discharges the original debt, and the non-dischargeability of the original debt does not affect the dischargeability of the obligation under the note. *Matter of West*, 22 F.3d 775, 778 (7th Cir.1994).

Proof that the note was given and received as payment of the original debt or that the parties agreed that it was to substitute a new obligation for the old one is lacking. Indeed, the forbearance agreement which was executed in conjunction with the note sued upon contains an explicit reservation of rights, making it clear that no release or waiver of rights was intended. (Ex. 13, at 3).

Defendant next argues that, because Plaintiff's state court judgment is based only on the note and the issues of fraud or defalcation were not litigated, the concept of judicial estoppel or the principles of res judicata somehow prevent him arguing that the debt is nondischargeable. The court does not see how or why this should be so.

 Before judicial estoppel comes into play a party must take inconsistent positions in different legal actions. *See Astor Chauffeured Limousine v. Runnfeldt Investment Corp.*, 910 F.2d 1540, 1548 (7th Cir. 1990); *Matter of Cassidy*, 892 F.2d 637, 641 (7th Cir.1990). The Defendant has not identified and this court can not see any inconsistency in the positions Plaintiff has taken before the Allen Circuit Court and this court. As for res judicata, until Defendant had filed his bankruptcy petition it was not possible to litigate the issue of dischargeability. Simply because a claim may have been reduced to judgment prior to a debtor's bankruptcy, without having to raise issues touching upon dischargeability, does not preclude the creditor from subsequently arguing that the judg-

ment represents a nondischargeable debt. *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *Levinson v. U.S.,* 969 F.2d 260, 262–264 (7th Cir.1992).

Defendant's obligation to Plaintiff, represented by the judgment entered by the Allen Circuit Court in cause number 02C01–9406–

CP–437, is a nondischargeable debt.[7] Judgment will be entered accordingly.

---

7. Because of the court's decision concerning § 523(a)(4), it is not necessary to consider the issues presented by § 523(a)(2).