**In re Gustavo CHOMAT, Debtor.**

**P.F.C. MANAGEMENT CORPORATION, Plaintiff,**

**v.**

**Gustavo CHOMAT, Defendant.**

**Bankruptcy No. 96–10488.**
**Adversary No. 96–446.**

United States Bankruptcy Court, S.D. Florida.

Dec. 15, 1997.

Maryann Pronti, New York City, for Plaintiff.

Carlos DeZayas, Coconut Grove, FL, for Defendant.

LARRY L. LESSEN, Bankruptcy Judge.*

### OPINION

The issue before the Court is whether the Defendant was acting in a fiduciary capacity for purposes of 11 U.S.C. § 523(a)(4) when a defalcation occurred.

The Plaintiff, P.F.C. Management Corp., is a managing general agent for a pool of insurance companies for the purpose of obtaining reinsurance. Athlone Intermediaries, Inc. is a reinsurance broker. The Defendant, Gustavo I. Chomat, and his wife were the sole shareholders of Athlone, with almost complete control of Athlone.

On August 24, 1990, the Plaintiff filed suit against Athlone in the Circuit Court of Cook County for an accounting of funds paid to Athlone for reinsurance. Thereafter, the action was removed to the United States District Court for the Northern District of Illinois. In its Amended Complaint filed December 17, 1992, the Plaintiff added additional counts for conversion of fiduciary funds, fraud, and resulting and constructive trusts against the Defendant as the alter ego of Athlone. After substantial discovery had taken place, both parties filed Motions for Summary Judgment.

On January 26, 1996, the Defendant filed a petition pursuant to Chapter 7 of the Bankruptcy Code. The Plaintiff initiated the present adversary proceeding against the Defendant by filing a timely Complaint to Determine Dischargeability of Debt. The Plaintiff alleges that it remitted premium funds to Athlone pursuant to an agreement to place and purchase reinsurance, and that the Defendant, through Athlone, never remitted the premiums, but instead converted them to his own use. The Plaintiff further alleges that the Defendant never placed any reinsurance coverage for the Plaintiff's pool members, and that the Defendant failed to account for the premium funds. The Plaintiff seeks a determination of nondischargeability pursuant to 11 U.S.C. § 523(a)(4).

The Plaintiff filed a Motion to Lift the Automatic Stay to permit it to continue the litigation with Athlone and the Defendant in the U.S. District Court for the Northern District of Illinois. The Court denied the Motion because the Defendant did not have legal representation in Illinois and the Court feared that there would not be "a full airing on the merits of both sides' positions". Accordingly, Plaintiff's case proceeded against Athlone in the District Court and against Defendant in this Court.

On May 6, 1996, the United States District Court for the Northern District of Illinois entered a default judgment against Athlone. The Defendant explained that he simply ran out of money to pay the Illinois attorneys, and the attorneys withdrew from the litigation in the District Court. Hence, Athlone's motion for summary judgment was not argued or prosecuted, and no one appeared to argue against Plaintiff's motion for summary judgment.

The May 6, 1996, Order of the District Court determined that the Plaintiff had an agreement with Athlone whereby the Plaintiff would remit premium funds to Athlone to be used by Athlone to place and purchase reinsurance agreements for certain of the insuring accounts managed by the Plaintiff. Between September 24, 1985, and June 23, 1986, the Plaintiff remitted to Athlone a total of $609,433.00 in furtherance of the Plaintiff's agreement with Athlone that Athlone would procure reinsurance. The District court held

---

* U.S. Bankruptcy Court, C.D.Ill., sitting by designation.

that Athlone did not obtain the reinsurance requested, and that Athlone never accounted for the funds received from the Plaintiff. Accordingly, the District Court found that Athlone breached its fiduciary trust with the Plaintiff by converting the funds it received from the Plaintiff to its own use. The District Court further found that constructive and resulting trusts arose when the Plaintiff remitted the $609,433.00 to Athlone. Therefore, judgment was entered in favor of the Plaintiff and against Athlone in the amount of $609,433.00. (The District Court did not find, and there has been no showing in this proceeding, that the Plaintiff suffered any damages as a result of the Defendant's failure to procure the reinsurance.)

Plaintiff next moved for summary judgment against the Defendant in this Court on the dischargeability claim. The Plaintiff argued that the findings of fraud, defalcation, and the fiduciary relationship between the Plaintiff and Athlone by the District Court imputed liability to the Defendant and collaterally estopped this Court from retrying those issues in this proceeding. The Defendant argued that the default judgment was insufficiently litigated for purposes of issue preclusion and that the Plaintiff had not established that the Defendant or Athlone were fiduciaries under § 523(a)(4).

On July 7, 1997, the Bankruptcy Court for the Southern District of Florida entered partial summary judgment against the Defendant. The Court held that the default judgment entered against Athlone in the Northern District of Illinois satisfied all of the elements of collateral estoppel so as to prevent litigation of the issue of Athlone's defalcation. The Court further held that the undisputed facts established that Athlone's liability for its defalcation had to be imputed to the Defendant because of his direct control and supervision over the affairs of Athlone and its accounts. However, the Court found that there were genuine issues of material fact on the issue of the Defendant's fiduciary status because the Northern District of Illinois' imposition of a constructive trust was a remedy meant to prevent unjust enrichment after defalcation. The Court further found that the Illinois and Florida statutes relied on by the Plaintiff to impose a trust relationship on reinsurance intermediaries were not enacted until after Athlone's wrongdoing. Accordingly, a trial was set to determine whether a fiduciary relationship existed between the parties before the defalcation occurred as required by § 523(a)(4).

■ 11 U.S.C. § 523(a)(4) provides that "a discharge [in bankruptcy] does not discharge an individual debtor from any debt...for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny". The term "fiduciary" is narrowly construed and refers only to technical, express, or statutory trusts that existed prior to the act creating the debt. *Quaif v. Johnson,* 4 F.3d 950 (11th Cir.1993). Courts have also found that such a fiduciary relation imposing real duties in advance of the breach includes "relations of inequality" that justify the imposition of a special duty on the fiduciary. *Matter of Marchiando,* 13 F.3d 1111 (7th Cir.1994). As the 7th Circuit explained:

> [These] cases involve a difference in knowledge or power between fiduciary and principal which ... gives the former a position of ascendancy over the latter ... The fiduciary may know much more by reason of professional status, or the relation may be one that requires the principal to repose a special confidence in the fiduciary ... These are all situations in which one party to the relation is incapable of monitoring the other's performance ... and therefore the law does not treat the relation as a relation at arm's length between equals.

*Marchiando,* 13 F.3d at 1116.

There was no evidence in this proceeding of a significant difference in knowledge or power between the Plaintiff and the Defendant which would give the Defendant a position of ascendancy over the Plaintiff. The Plaintiff is a corporation with experience in the reinsurance business. There was no evidence that the Plaintiff was incapable of monitoring the Defendant's performance. Nothing in the record suggests that the relationship between the parties was anything but an arm's length transaction.

The Defendant finds it significant that the Plaintiff failed to plead an "express trust" in the District Court litigation. The Defendant argues that if the funds had really been impressed with an express trust at the time they were delivered to Athlone, then the Plaintiff would have specifically alleged or made reference to an express trust rather than an implied trust during the litigation in the District court. The Court is not persuaded by this argument. Although the Defendant characterizes the express trust theory as the Plaintiff's "best point", it is also clearly the most difficult point to prove up. The Plaintiff's strategic decision to rely on a constructive or resulting trust theory in the District Court proved successful in that litigation. It was not necessary to the Plaintiff's success to prove an express trust, and the Court will not read anything into the Plaintiff's decision not to pursue this argument in the District court.

■ State statutes which create a fiduciary duty to account for and remit premiums may create "technical trust" which would prevent the discharge of a debt under § 523(a)(4) *Quaif v. Johnson, supra,* 4 F.3d at 954. In this case, however, both the Illinois and Florida statutes regulating reinsurance intermediaries and creating a trust relationship were not enacted until 1991 and 1992, respectively, and thus were not effective at the time of the wrongdoing. *See,* 215 ILCS 100/5 and 100/20; Fla. Stat. Ann. § 626.7492. Therefore, there is no statutorily created trust in this proceeding.

■ Plaintiff argues that Illinois common law impresses a technical trust on insurance brokers who receive premium funds from insureds. However, this common law fiduciary duty as to premium funds arises only when the broker is the agent of the insured. *St. Paul Fire & Marine Insurance v. Great Lakes Turnings, Ltd.,* 774 F.Supp. 485, 488 (N.D.Ill.1991). The Plaintiff has not shown by a preponderance of the evidence that the Defendant or Athlone were acting as the Plaintiff's agent in these transactions. Neither party was able to introduce into evidence a written agreement executed by the Plaintiff and Athlone which expressly obligated Athlone to act in a fiduciary capacity with respect to the Plaintiff's premium funds. However, a reinsurance treaty executed by the Plaintiff (but not by any reinsurer) indicates that Athlone is the agent of the reinsurer for the purpose of collecting and remitting premium funds so that payment to Athlone constitutes payment to the reinsurer. *See, Reinsurance Intermediaries: When Are They Liable and To Whom,* Mealy's Insurance Litigation Reports: Reinsurance, Vol. 7, # 10, Sept. 25, 1996, at 2. At best, there was a dual agency in this transaction; Athlone was the agent of the Plaintiff for the purpose of finding, placing and purchasing reinsurance, but the agent of the reinsurers for the purpose of collecting and remitting funds. Under these circumstances, the common law technical trust doctrine announced in *St. Paul* is not applicable to these facts.

The Plaintiff next argues that the common law of Florida creates a fiduciary relationship, and cites the following excerpt from *Fidelity & Deposit Co. of Maryland v. USA-FORM Hail Pool, Inc.,* 465 F.Supp. 478, 483 (M.D.Fla.1979):

> [B]oth Pan–Am and Limited sold no insurance; each company acted only as a reinsurance broker among other insurance companies who wished either to "cede" portions of their liability under extant insurance policies or to insure other carriers against liability on those policies. In this go-between role, both Pan–Am and Limited would receive premium monies from the ceding company for eventual disbursement to the insuring company. What USA-FORM, Limited, and Pan–Am had in common, of course, was that each held the premium monies in a fiduciary capacity for the benefit of the insurance companies that each dealt with.

This citation supports the position advanced by the Defendant rather than the Plaintiff. In this case, the Plaintiff was the "ceding company". The citation from *Fidelity & Deposit* makes it clear that Athlone was holding the premium funds in a fiduciary capacity for the benefit of the insurance companies, not for the ceding company, i.e., the Plaintiff. Therefore, the common law of Florida does not help the Plaintiff.

The Plaintiff argues that an express agreement existed between the parties which required Athlone to act as a fiduciary to Plaintiff with respect to the premium funds. As noted above, there is no document which evidences this agreement. Moreover, the Defendant persuasively testified that there was never any written or oral agreement between the Plaintiff and Athlone regarding the premium funds. The Defendant stated that Athlone only agreed with the Plaintiff to attempt to find reinsurers willing to write the treaties with the Plaintiff's principals; Athlone never agreed to act as the agent of Plaintiff, nor did it agree to act on behalf of the Plaintiff for the purpose of holding, maintaining or forwarding premium funds. Athlone's financial agreements were always with the reinsurer, not with the Plaintiff, and its commissions were at all times paid by the reinsurer.

The Plaintiff argues that the deposit of its premium funds into a premium trust account is evidence of its fiduciary relationship with Athlone. However, *Marchiando* makes it clear that a mere agreement to segregate certain funds does not create a fiduciary relationship. *In re Marchiando, supra,* 13 F.3d at 1116.

For the foregoing reasons, the Court finds that the Defendant was not acting in a fiduciary capacity for purposes of 11 U.S.C. § 523(a)(4) when the defalcation occurred. Therefore, Defendant's debt to the Plaintiff is determined to be dischargeable.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.